**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**June 19, 2014**

# In the Court of Appeals of Georgia

A14A0289. CUPE v. THE STATE.

PHIPPS, Chief Judge.

Following a jury trial, a Troup County jury found Walter Charles Cupe guilty of robbery and burglary. On appeal from the judgment of conviction and the denial of his motion for new trial, Cupe claims that the trial court erred in (i) denying his motion to suppress; (ii) denying his motion to sever; and (iii) failing to properly charge the jury. For the reasons set forth below, we find no error and affirm.

Viewed in a light most favorable to the jury's verdict,[1] the evidence showed that on August 15, 2003, Angel Fowler, who was visiting a mall in LaGrange, stepped outside the back entrance of a store as she was talking on the phone. Shortly thereafter a man, whom Fowler identified as Cupe at trial, came up from behind her

---

[1] See *Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007).

and began "pulling on" her pocketbook. Fowler fought back, but Cupe hit her repeatedly and eventually grabbed her pocketbook and ran.

On the evening of Thanksgiving Day, November 27, 2003, Cupe, a regular customer, came into George Joseph's convenience store and gas station in Hogansville to buy cigarettes. Cupe did not have enough money to complete the purchase, but Joseph told his wife to "let him go," so she gave Cupe the cigarettes. After Cupe left, Joseph came out from behind the counter four times to observe Cupe standing outside the store. It was a rainy day and Cupe's body was wet. The fifth time Joseph checked, he did not see Cupe. Joseph lived next door to the store, and Cupe lived two houses down from Joseph's residence.

Joseph closed the store at 7:00 p.m. and went home. When Joseph opened the door he heard a loud sound from the back of the house, and he went to the kitchen and saw that the deadbolt on the back door was "gone" and that there were leaves and water on the floor. In the bedroom, the bed had been pushed to the side, and a cabinet was open. Missing from the home was, according to Joseph, "$15,000 Indian currency," an indeterminate amount of U. S. currency, his wallet, a briefcase containing legal documents, a video camera, and jewelry which he valued at over $12,300.

During officers' investigation of the crime, Joseph named Cupe as a possible burglar "because the way [Cupe] was acting." The day after the burglary, after dusting Joseph's home for prints, the Chief of the Hogansville Police Department and two officers walked down a path which led from Joseph's home to the back of Cupe's house with the intent of performing a "knock and talk." Parked in Cupe's back yard between where the police were walking and Cupe's back door was a Buick automobile in which an officer saw two brown briefcases and a piece of paper with Joseph's name printed on it. After speaking with Cupe, the Chief informed him that he was going to go and obtain a search warrant for the car and warned him not to approach the vehicle because there was evidence inside. An officer remained at the scene and shortly thereafter placed Cupe under arrest after Cupe grabbed a set of keys and a large garbage bag and then touched the car. After being transported to the police station, Cupe told an officer that he does his "burglaries in the rain because . . . police won't come out of their cars and get wet," and that "if you said I done this burglary; I done this burglary."

After police obtained a search warrant for Cupe's home and the car, they recovered two briefcases from the car. They contained personal effects of Joseph and his wife. Police also recovered a bag which contained Fowler's checkbook, her gym

membership card, her daughter's social security card, and Joseph's identification documents. Police found cash in Cupe's house and returned $6,000 to Joseph, who identified the currency by the bands he used to bundle the money together.

At Cupe's trial, Officer Michael Smith of the Hogansville Police Department testified that on November 28, 2003, after Cupe had been transported to the police station and he was filling out the warrants for the burglary, Cupe told Smith that he "would find out where [Smith] lived and come to [his] house and tie [his] wife to the bed and **** her brains out."

In a three-count indictment, Cupe was charged with the crime of burglary by entering Joseph's home with intent to commit theft, robbery by taking Fowler's purse and other property by the use of force, and terroristic threats by threatening to rape and falsely imprison Officer Smith's wife. Cupe filed pre-trial motions to suppress the evidence seized from Cupe's car and residence and to sever the three counts for purposes of trial. The trial court denied the motions.

Following a trial, the jury found Cupe guilty of burglary and robbery, and the trial court sentenced him to serve 20 years on each count to run concurrently. The jury

found Cupe not guilty of terroristic threats. The trial court later denied Cupe's motion for new trial, and Cupe appeals.[2]

1. Cupe claims that the trial court erred in denying his motion to suppress. We disagree.

In reviewing a trial court's ruling on a motion to suppress, the appellate court must follow three principles:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. These principles apply equally whether the trial court ruled in favor of the State or the defendant.[3]

---

[2] Cupe filed a timely motion for new trial on July 9, 2004, but the trial court took no action on the motion until after Cupe filed an amended motion for new trial on February 13, 2013, after which the trial court denied the motion in an order filed May 9, 2013.

[3] *Brown v. State*, 293 Ga. 787, 802-803 (3) (b) (2) (750 SE2d 148) (2013) (citations and punctuation omitted).

To the extent that "the evidence at a suppression hearing is uncontroverted and the credibility of witnesses is not in question, we conduct a de novo review of the trial court's application of the law to the undisputed facts."[4]

Cupe contends that the police officers were not authorized to be on his property when they approached his house without a warrant and saw the two briefcases inside the Buick. Therefore, he argues, the police discovered the incriminating evidence during an illegal search and the evidence seized from the car should have been suppressed. The State responds that the briefcases were in the plain view of officers and were not found by police during a search.

Construed most favorably to support the trial court's findings and judgment, the evidence showed the following. After Joseph identified Cupe as the person he suspected had broken into his house, the Chief decided to go from Joseph's house, where he had been investigating the crime, directly to Cupe's house to talk with Cupe. The Chief decided to walk rather than going back out to the street and taking his car. Cupe's house was "two houses up" from Joseph's house, and the Chief knew of a path that led from Joseph's property to Hutcheson Moody Road, which was

---

[4] *Jones v. State*, 291 Ga. 35, 36-37 (1) (727 SE2d 426) (2012) (citation omitted).

6

adjacent to Cupe's home. Another officer testified that a path ran "right close to" Cupe's back door. The Chief testified that they proceeded from "Mr. [Joseph's] path to Mr. Cupe's path," and when defense counsel asked on cross-examination if the path was "just the open ground in a back yard," the Chief responded "[i]t's a commonly known path that I have observed the public using in the past."

The Chief also testified that he had been to Cupe's residence at least four or five times previously and that he always went to the back door. When asked about the last time, prior to this occasion, he had been to Cupe's residence, the Chief testified that he had parked his patrol car in the back yard and gone to the back door. Photographs of Cupe's residence were entered into evidence; the back part of Cupe's property was not enclosed and there were no signs warning a guest against entry.

On this occasion, using a path, the Chief and two officers walked directly from Joseph's house to Cupe's house. It was approximately 7:00 p.m. in the evening, and they used flashlights to illuminate their way. In order to reach Cupe's back door using the route from Joseph's house taken by the police, it was "necessary," according to the testimony of a defense investigator, to walk past a Buick automobile parked between five and ten feet from Cupe's house. And as they passed the Buick, one of the officers looked into the car's rear door window with the assistance of his

flashlight and saw two briefcases.[5] One of the cases was open, and within not "more than a second or two," the officer saw "some paperwork . . . that had the name George Joseph printed in bold black letters on it." The Chief then obtained a warrant for the search of the car and Cupe's residence.

As a general rule, "a warrant is required to search the curtilage. The yard immediately surrounding one's dwelling is well within the curtilage."[6] However, the plain view exception to the search warrant requirement recognizes that

> [o]bjects within the plain view of an officer who is in a lawful position are subject to seizure and may be introduced into evidence. The plain view rule applies only if (1) the initial intrusion which afforded the plain view was lawful, (2) the discovery of the evidence was inadvertent, and (3) the incriminating nature of the evidence was immediately apparent.[7]

Here, the Chief and the two officers entered Cupe's property in order to knock on the door and talk with Cupe. "Where a police officer enters upon private property

---

[5] Although Cupe argues on appeal that the Buick was covered by a shed, the evidence does not show that the car was covered while it was on Cupe's property. Rather, according to the Chief, the car was later "parked under a shed in [the] impound lot."

[6] *Galbreath v. State*, 213 Ga. App. 80, 82 (2) (443 SE2d 664) (1994) (emphasis omitted).

[7] *Robinson v. State*, 312 Ga. App. 736, 746 (4) (a) (719 SE2d 601) (2011).

only to the extent of knocking on outer doors, the Fourth Amendment is not violated."[8] Further, "if police utilize normal means of access to and egress from the house for some legitimate purpose, such as to make inquiries of the occupant . . ., it is not a Fourth Amendment search for the police to see or hear or smell from that vantage point . . . ."[9] Here, although the police had elected to talk with Cupe at his back door, as opposed to walking around to the front door, a trier of fact could conclude that the rear of Cupe's property and the back door were normal means of access to and egress from the house.[10] Thus, "the particular set of circumstances . . .

---

[8] *State v. Zackery*, 193 Ga. App. 319 (387 SE2d 606) (1989). See *State v. Tye*, 276 Ga. 559, 564 (3) (580 SE2d 528) (2003) (holding that "questioning [defendant] on his own porch in connection with a murder investigation did not violate his constitutional rights"); *Gilreath v. State*, 247 Ga. 814, 819 (1) (279 SE2d 650) (1981) (noting "underlying premise that the officer's approach to the outside door, even though it be within the curtilage, is unobjectionable"); *Herring v. State*, 279 Ga. App. 162, 164 (630 SE2d 776) (2006) (officer engaged in permissible "knock and talk" procedure when they approached and knocked on appellant's door).

[9] 1 LaFave, Search & Seizure, A Treatise on the Fourth Amendment, § 2.3 (c) (5th ed.).

[10] See, e.g., *United States v. Garcia*, 997 F.2d 1273, 1279-1280 (1) (9th Cir. 1993) ("If the front and back of a residence are readily accessible from a public place, like the driveway . . ., the Fourth Amendment is not implicated when officers go to the back door reasonably believing it is used as a principal entrance to the dwelling.").

justified the officers' approach to the back door," and the initial intrusion which

afforded the view of the briefcases was lawful.[11]

Although the officer who saw the briefcases had to look into the car in order

to see them, this did not, in itself, constitute an unlawful search. "Law enforcement

officers simply have the right to look into automobiles, so long as they have a

legitimate reason and are looking from a place in which they have a right to be (e.g.,

a street or roadside)."[12] Thus, we have found that an officer did not violate the Fourth

Amendment by looking into a window of a van parked in the defendant's driveway

along a route any visitor would follow to the front door.[13] Here, as the Chief and the

two officers entered Cupe's property to talk with Cupe, walked directly to the back

---

[11] *King v. State*, 289 Ga. App. 461, 465 (657 SE2d 570) (2008) (finding that it was reasonable for officers to approach defendant's back door to make inquiries in furtherance of their investigation).

[12] *State v. O'Bryant*, 219 Ga. App. 862, 863 (467 SE2d 342) (1996) (citation and punctuation omitted).

[13] See *Galloway v. State*, 178 Ga. App. 31, 34 (342 SE2d 473) (1986). Compare *O'Bryant*, supra at 865 (where officers had knocked on both doors and occupants of the home did not answer, and an officer then walked over to a truck parked by the side of the house and peered through its tinted windows, the trial court correctly determined that "the agents had no authority to extend their presence on defendant's private property from knocking on outer doors, to looking inside of the vehicle parked on the premises").

door for that purpose, and the briefcases, albeit inside the vehicle, were in view as they passed the car,[14] the officer's inadvertent discovery of the immediately incriminating evidence was not a violation of Cupe's Fourth Amendment rights. Rather, as the discovery of the briefcases came within the plain view exception to the search warrant requirement, the trial court did not err in denying Cupe's motion to suppress.[15]

2. Cupe claims that the trial court erred in failing to sever the burglary count from the robbery count, and both of those counts from the terroristic threats count. We disagree.

"[A] defendant has a right to severance where the offenses are joined solely on the ground that they are of the same or similar character because of the great risk of prejudice from a joint disposition of unrelated charges."[16] But "where the joinder is

---

[14] We note that "[t]he use of a flashlight to see what would otherwise be in 'plain view' falls within the 'plain view' standard." *Redd v. State*, 240 Ga. 753, 754 (1) (243 Se2d 16) (1978).

[15] See, e.g., *Galbreath*, supra at 83 (2) ("[t]he evidence authorized the determination that the contraband . . . [was] in plain view and [was] discovered without resort to an investigatory search, while the officer was in a lawful vantage point").

[16] *Carruth v. State*, 290 Ga. 342, 346 (4) (721 SE2d 80) (2012).

11

based upon the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, severance lies within the sound discretion of the trial judge since the facts in each case are likely to be unique."[17] Further, "where evidence of one charge would be admissible in the trial of another, a trial court does not abuse its discretion by denying a motion for severance."[18] If severance is not mandatory, "the court must then decide whether severance would promote a just determination of guilt or innocence as to each offense."[19]

As for the robbery and burglary charges, physical evidence of both crimes was found in the Buick, and the same witnesses would be required to testify as to how the evidence was discovered. Thus, the two crimes were intertwined such "that some of the same evidence would be required at separate trials on each charge."[20] It cannot be

---

[17] Id.

[18] *Simmons v. State*, 282 Ga. 183, 185 (4) (646 SE2d 55) (2007) (citation omitted).

[19] *Stewart v. State*, 277 Ga. 138, 139 (587 SE2d 602) (2003).

[20] *Johnson v. State*, 257 Ga. 731, 733 (2) (c) (363 SE2d 540) (1988) (citation and punctuation omitted). See *Moment v. State*, 157 Ga. App. 40, 41 (276 SE2d 97) (1981) (finding no error in failing to sever the charges for trial where "[t]he evidence of identity, though relating to different victims, was inextricably intertwined in all the various offenses charged" and that "it would be almost impossible to present to a jury evidence of one of the crimes without also permitting evidence of the others")

said that the burglary and robbery offenses were joined *solely* because they were of the same or similar character, and severance was not required.[21]

The terroristic threats charge arose from a statement allegedly made by Cupe to Officer Smith, one of the officers who went to Cupe's residence and discovered the evidence in the Buick.[22] As the Buick contained physical evidence incriminating Cupe in both the burglary and the robbery, Officer Smith was a state's witness to both crimes. "[E]vidence of an act by an accused, intended to obstruct justice or avoid punishment for the crime for which he or she is on trial, is admissible if the act

(punctuation omitted).

[21] See *Stewart*, supra (noting that "offenses have not been joined *solely* because they are of the same or similar character" where evidence of one offense is admissible upon the trial of another); *Dingler v. State,* 233 Ga. 462, 463 (211 SE2d 752) (1975) (providing that a defendant has the right to severance "[w]henever two or more offenses have been joined for trial solely on the ground that they are of the same or similar character") (citation and punctuation omitted); *Brown v. State*, 230 Ga. App. 190, 194 (2) (495 SE2d 858) (1998) (noting that "[u]nder the evidentiary standard for joinder, the state must show similarity of conduct only to the extent that the sole purpose of joinder is not because the offenses are of a like character") (citation and punctuation omitted).

[22] Although the jury found Cupe not guilty of terroristic threats, his claim of error regarding the trial court's failure to sever the offense from the trial of the robbery and burglary was not rendered moot. See generally *Carter v. State*, 261 Ga. 344, 345 (1) (404 SE2d 432) (1991).

constitutes an admission by conduct."[23] Accordingly, evidence of Cupe's threat against Officer Smith was admissible in a separate robbery or burglary trial.[24] Thus, we cannot conclude that Cupe was entitled to severance of the terroristic threats count from either the burglary or the robbery charges.[25]

Although the offenses were not joined for trial solely because they were of the same or similar character, "severance may still be appropriate, although not mandated, because the trial court must determine whether the trier of fact will be able to fairly and intelligently judge each offense."[26] In exercising its discretion, "a trial court must look to the number and complexity of the offenses charged and determine whether a trier of fact can parse the evidence and apply the law with regard to each

---

[23] *Moss v. State*, 245 Ga. App. 811, 813 (2) (citations and punctuation omitted). See, e.g., *Dukes v. State*, 290 Ga. 486, 488 (3) (722 SE2d 701) (2012) (evidence of a defendant's attempt to influence or intimidate a witness can serve as circumstantial evidence of guilt).

[24] See *Payne v. State*, 152 Ga. App. 471, 473 (3) (263 SE2d 251) (1979) (evidence of defendant's threat against a state witness was admissible as an admission by conduct).

[25] See *Moss*, supra (finding that in any separate trial on the theft charges, evidence of the phone calls and obstruction would be admissible, and therefore the trial court did not abuse its discretion in denying motion to sever the counts).

[26] *Stewart*, supra.

14

charge."[27] Here, given the limited complexity of the evidence, the trial court could conclude that a trier of fact could fairly and intelligently assess the evidence and the law as to the three counts.[28] Nor was there any showing that the jury, which acquitted Cupe on the terroristic threats charge, was confused or misled by the combined trial.[29] Accordingly, the trial court did not abuse its discretion in denying the motion to sever.

3. Last, Cupe contends that the trial court erred in failing to charge the jury on the principles of then OCGA § 24-4-6, which provided: "To warrant a conviction on

---

[27] Id. (citation omitted). See, e.g., *Coats v. State*, 234 Ga. 659, 662 (4) (217 SE2d 260) (1975) (holding that in determining whether severance is necessary to achieve a fair determination of defendant's guilt or innocence of each offense, the "court should consider whether in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.") (citation and punctuation omitted).

[28] See, e.g., *Perry v. State*, 317 Ga. App. 885, 886 (733 SE2d 57) (2012) (holding that "the charged offenses were neither so numerous nor so complex that the jury was unable to parse the evidence and correctly apply the law with regard to each charge").

[29] See *Heard v. State*, 287 Ga. 554, 559 (4) (697 SE2d 811) (2010) (finding that the trial court did not abuse its discretion in denying appellant's motion for severance, noting that "the verdict itself, including [appellant's] acquittal for some of the charges, shows that the jury fully understood the law and evidence") (citation and punctuation omitted).

15

circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[30] Cupe acknowledges that he did not request that the trial court give the charge. "Where, as here, the State's case is based upon direct,[31] as well as circumstantial, evidence, the trial court does not err by failing to . . . sua sponte" charge on the standard of proof necessary to convict an accused on circumstantial evidence.[32] Accordingly, we find no error.

*Judgment affirmed. Ellington, P. J., and McMillian, J., concur.*

---

[30] Effective January 1, 2013, this provision appears at OCGA § 24-14-6.

[31] As noted above, evidence adduced at trial included that Fowler identified Cupe as the person who robbed her, and Cupe admitted to an officer, "if you said I done this burglary; I done this burglary."

[32] *Hill v. State*, 276 Ga. 220, 221 (2) (576 SE2d 886) (2003). See *Russell v. State*, 319 Ga. App. 472, 477 (3) (b) (735 SE2d 797) (2012) (finding that given that the state adduced direct and circumstantial evidence, "the trial court was not required to charge the jury on circumstantial evidence pursuant to OCGA § 24-4-6, absent a request").