**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL and GOBEIL, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 28, 2018**

# In the Court of Appeals of Georgia

A18A0611. WIGGINS v. THE STATE.

GOBEIL, Judge.

Following a bench trial, John Parker Wiggins was convicted of possession of less than an ounce of marijuana. On appeal from the judgment of conviction, Wiggins asserts that the trial court erred in denying his motion to suppress because undisputed facts show that, absent a warrant, the responding sheriff's deputy had no reasonable or articulable suspicion on which to enter the backyard of a residence where Wiggins was arrested.[1] We agree and reverse.

In reviewing a trial court's ruling on a motion to suppress, the appellate court must follow three principles:

---

[1] Defendant Marcel Ray joined Wiggins's motion to suppress in the trial court. Ray is not a part of the present appeal.

First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. These principles apply equally whether the trial court ruled in favor of the State or the defendant.

*Cupe v. State*, 327 Ga. App. 642, 644 (1) (760 SE2d 647) (2014) (footnote omitted). To the extent that "the evidence at a suppression hearing is uncontroverted and the credibility of witnesses is not in question, we conduct a de novo review of the trial court's application of the law to the undisputed facts." *Jones v. State*, 291 Ga. 35, 36-37 (1) (727 SE2d 456) (2012).

Construed most favorably to the trial court's findings and judgment, the evidence showed the following facts. On September 27, 2016, at approximately 11 p.m., Deputies Trent Anding and Tommy Grier of the Fayette County Sheriff's Office responded to a report of a loud party at a residence whose owners were suspected of being out of town. Upon arrival, the deputies noticed numerous cars parked in the driveway and on the street outside the property and could hear loud noises coming

from the rear of the residence. At the suppression hearing, Deputy Anding testified that the officers walked down the driveway "skirting the left side of the driveway towards the wood line." The officers had to walk "to the back of the driveway before [they] could see the backyard." As the officers proceeded down the driveway, they passed a walkway to the front door. The officers never attempted to knock on the front door to confirm whether the homeowners were present in the house.[2] Rather, Deputy Anding described that the officers could "obviously hear a party coming from the backyard" and "[u]sually, if there's a party going on, everyone's going to be at the party." While still standing in the driveway, the officers observed a large party occurring in the backyard with several people on a raised porch. Given these circumstances, Deputy Anding testified that he suspected that the partygoers had broken into the house while the homeowners were out of town. Deputy Anding announced his presence as a Deputy Sheriff and instructed "[e]verybody [to] stay there." The individuals were not free to leave at that point. When an unidentified individual yelled "run," the officers observed some people jump off the back of a

_____

[2] Officers contacted the homeowners via telephone "later on that evening," confirming that they were out of town.

3

balcony. The deputies then gave chase and detained one of the individuals[3] attempting to flee. Deputy Anding also saw a backpack being thrown off the balcony. After detecting the smell of marijuana, Deputy Anding discovered marijuana inside the backpack. Wiggins admitted to Deputy Anding that the backpack belonged to him, and subsequently was arrested and charged with possession of less than an ounce of marijuana.

At the suppression hearing, Wiggins testified that on the date in question, "[t]he homeowner, Malachi"[4] invited him to the house to celebrate a birthday party. Wiggins planned to spend the night at the house and celebrate Malachi's birthday with all of their friends. Wiggins had been to the house previously, including visits to the pool in the backyard. Wiggins confirmed that he had utilized the driveway to access both the pool and the backyard in the past, although he usually went to the front door, as he did on the night in question. Wiggins testified that on the night of the party, he could not see the parked police car at the front of the house or the

---

[3] This individual, later identified as Marcel Ray, was arrested for obstruction.

[4] The record contains no information regarding Malachi's full name, age or his relationship to the owners of the residence.

4

driveway from the porch in the backyard and noticed the officers only when they entered the backyard with flashlights.

Wiggins moved to suppress the officers' entry into the backyard and the subsequent search of his backpack, arguing that Deputy Anding's discovery of the marijuana in the backpack resulted from the deputy's unauthorized entry into the curtilage of the private residence. As a result, Wiggins argued, all evidence discovered by law enforcement on the day of the search was illegally seized and should have been suppressed by the trial court. The trial court denied Wiggins's motion, finding that based on reports of a party at the residence while the homeowners were out of town, Deputy Anding was authorized to investigate whether the individuals had permission to be at the property. Moreover, the court concluded that because Deputy Anding "was taking the same route as any other guest" in his approach towards the back of the residence, his observations of the backyard from the driveway did not qualify as a search. Wiggins now appeals the ruling on the motion to suppress.

The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures." U. S. Const. Amend. IV. "When a defendant moves to suppress evidence based on an illegal search, the state must bear the burden

of proving that the search was lawful." *Leon-Velazquez v. State*, 269 Ga. App. 760, 761 (1) (605 SE2d 400) (2004) (footnote omitted); see also OCGA § 17-5-30 (b). "The protections afforded by the Fourth Amendment extend to the home and its curtilage." *Arp v. State*, 327 Ga. App. 340, 342 (1) (759 SE2d 57) (2014). Curtilage has been described as "the area immediately surrounding a dwelling house," and the extent of the curtilage "is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." *United States v. Dunn*, 480 U. S. 294, 300 (II) (107 SCt 1134, 94 LE2d 326) (1987). Our Supreme Court has defined curtilage as "the yards and grounds of a particular address, its gardens, barns, and buildings." *Espinoza v. State*, 265 Ga. 171, 173 (2) (454 SE2d 765) (1995) (citation and punctuation omitted). "It is the general rule that a warrant is required to search the curtilage," which includes the backyard of a residence. *Arp*, 327 Ga. App. at 343 (1) (citation and punctuation omitted).

"Without more, even probable cause to believe that a crime has been committed or is being committed does not authorize a warrantless search of one's dwelling." *Leon-Velazquez*, 269 Ga. App. at 762 (1) (punctuation and footnote omitted). "In order to claim the protection of the Fourth Amendment against unreasonable search and seizure, a defendant must demonstrate that he personally has an expectation of

6

privacy in the place searched, and that his expectation is reasonable." *Smith v. State*, 284 Ga. 17, 21 (3) (663 SE2d 142) (2008) (citation and punctuation omitted).

> A person has a legitimate expectation of privacy in his or her home and may have a legitimate expectation of privacy in a house in which the person is an overnight guest; however, one who is merely present with the consent of the householder may not claim the protection of the Fourth Amendment.

Id. (citation and punctuation omitted). Here, there is no dispute that Wiggins was an invited overnight guest at the house when the deputies arrived.[5]

As an initial matter, Wiggins argues that the trial court erred in concluding that Deputy Anding's observations of the backyard did not constitute a search because the backyard and porch were visible or in plain view from a location where the officers were authorized to be upon arriving at the home, namely, the driveway. Compare *Galbreath v. State*, 213 Ga. App. 80, 82 (2) (443 SE2d 664) (1994) ("objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence") (citation and punctuation omitted). In this case, Deputy Anding described that the officers followed the

---

[5] The State has not challenged Wiggins's standing to invoke the protections of the Fourth Amendment.

driveway to the rear of the residence and then observed a group of individuals in the backyard while still standing in the driveway. Wiggins highlights that there is no indication that the officers were unable to approach the front door or received no response at the front door. See *State v. Zackery*, 193 Ga. App. 319 (387 SE2d 606) (1989) ("[A] police officer who is unable to approach the front door of a residence and tries to knock upon a side door only makes a 'valid intrusion' upon the property"). Specifically, Deputy Anding testified that as the officers proceeded down the driveway, they passed a walkway to the front door, but never attempted to knock on the front door to confirm whether the homeowners were present in the house based on the assumption that "if there's a party going on, everyone's going to be at the party." Wiggins challenges the trial court's finding that the homeowners treated the driveway to the backyard as a public entrance, whereby the officers were "merely taking the same route as would any guest or other caller." *Dean v. State*, 200 Ga. App. 752, 753 (1) (409 SE2d 667) (1991) (citation omitted). Although Wiggins testified that he had walked directly to the backyard on occasion as an invited guest, he also clarified that he usually went to the front door and that he was admitted there on the night in question.

8

In this case, regardless of whether Deputy Anding's observations of the party in the backyard occurred from a lawful vantage point on the driveway at the rear of the residence, the State failed to meet its burden to show that the officers were authorized to enter the backyard. Given that the deputies were not invited into the home and did not have a search warrant to enter the curtilage of the home, the State was required to show that the officers' entry into the backyard without a warrant and absent consent was justified by exigent circumstances. See *Arp*, 327 Ga. App. at 344 (2). An exigent circumstance generally "is the officer's reasonable belief that such action is a necessary response on his part to an emergency situation." Id. at 345 (2) (citation omitted); see also *Love v. State*, 290 Ga. App. 486, 487 (659 SE2d 835) (2008) ("An exception to the warrant requirement exists . . . where the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.") (punctuation omitted). Police may encounter exigent circumstances "in the pursuit of their duties to preserve public order, to maintain the peace, and to protect lives, persons, property, health and morals." *Love*, 290 Ga. App. at 488 (punctuation omitted.) "In these cases, police do not enter a residence for the purpose of arresting or seizing evidence against an occupant; rather, they enter in response to what they reasonably perceive as an

9

emergency involving a threat to life or property." Id. Whether exigent circumstances exist "is a question of fact to be determined by the trial court, and the judge's decision, if supported by any evidence, is to be accepted." *State v. Culpepper*, 295 Ga. App. 525, 527 (672 SE2d 494) (2009) (footnote omitted). To answer this question, "we review police actions from the standpoint of a hypothetical reasonable officer and must measure those actions from the foresight of an officer acting in a quickly developing situation and not from the hindsight of which judges have benefit." *Arp*, 327 Ga. App. at 344 (2) (citation omitted).

Here, based on the circumstances known to Deputy Anding when he arrived at the scene, as shown by the facts in the record before us, the trial court could not have found that exigent circumstances authorized the deputies to enter the backyard. See *Arp*, 327 Ga. App. at 344-345 (2); *Love*, 290 Ga. App. at 488. While responding to a report of an unauthorized party at a residence where the homeowners were reported to be out of town, the deputy found several cars parked in front of the residence and heard loud noises coming from the rear of the house consistent with a party. Rather than approach the front door to confirm whether the homeowners were present, the officers walked directly to the rear of the residence and observed a gathering of partygoers in the backyard. Deputy Anding testified that he did not

10

witness any illegal activity aside from the presence of a large group of individuals on the back patio. After Deputy Anding announced his presence and instructed "[e]verybody [to] "stay there," an unidentified individual yelled "run" and some of those present jumped off the raised porch. At that point, the deputy entered the backyard in pursuit of several of the individuals. Wiggins admitted to tossing a backpack off the porch, which Deputy Anding opened after detecting the odor of marijuana. The deputies, however, did not find the marijuana until they had already entered the backyard illegally. Moreover, the mere presence of contraband without more does not give rise to exigent circumstances. *Kirsche v. State*, 271 Ga. App. 729, 731 (611 SE2d 64) (2005).

Given the totality of the circumstances, we conclude that the deputies' entry into the backyard was not supported by a combination of probable cause and exigent circumstances.[6] See *Mitchell v. State*, 323 Ga. App. 739, 740-742 (747 SE2d 900)

_____

[6] Respectfully, we are not persuaded by the dissent to affirm the trial court, and instead conclude that governing law requires finding an unlawful search and seizure under the facts of this case. The dissent cites to *Alvarez v. Montgomery Cty.*, 147 F3d 354 (4th Cir. 1998) for the proposition that it is reasonable for officers to enter a backyard to investigate at party. But the *Alvarez* holding is more narrow than apparent in the dissent, and is distinguishable on its facts. Those officers responded to a 911 call about an underage drinking party. Id. at 358 (II) (B). Upon arriving at the scene, they observed discarded alcohol containers and "awkwardly parked cars." Id. Further, the officers followed a sign saying "Party In Back" with an arrow

11

(2013) (concluding that a warrantless search was unlawful where officers entered the defendants' yard, without their consent, based on "a hunch" that a fleeing suspect may have been nearby); *Smith v. State*, 262 Ga. App. 614, 620-621 (3) (585 SE2d 888) (2003) (officer violated the Fourth Amendment when, without consent or exigent circumstances, he leaned through the doorway and looked into apartment). Compare *Alvarez v. State*, 312 Ga. App. 552, 557 (2) (718 SE2d 884) (2011) (officer's entry into backyard was justified by exigent circumstances of officer safety because he had reason to believe that someone at residence was armed with a gun). Because the evidence at issue — the marijuana found in Wiggins's backpack — was obtained through a search and seizure that was unlawful under the Fourth Amendment, we conclude that the trial court erred in denying Wiggins's motion to suppress.

---

pointing to the backyard, and upon entering the backyard, first asked to speak with the homeowner and did not come into physical contact with anyone in the backyard. Id. at 358-359 (II) (B). Based on those facts, the Fourth Circuit concluded that the officers' entry into the backyard did not constitute a Fourth Amendment violation. The officers in this case, however, observed no illegal activity (such as underage drinking or the presence of firearms or drugs), saw no sign directing partygoers to the backyard, and did not inquire as to the whereabouts of the homeowners or party hosts. Instead, they ordered everyone "[to] stay there" and entered the backyard. Under these facts, the dissent's "mullet doctrine" does not "get the officers into the party out back."

*Judgment reversed. Ellington, P. J., concurs.  Bethel, J., dissents.* \*

**\* THIS OPINION IS PHYSICAL PRECEDENT ONLY.  COURT OF APPEALS RULE 33.2 (a)**.

A18A0611. WIGGINS v. THE STATE.

BETHEL, Judge, dissenting.

"The touchstone of the Fourth Amendment is reasonableness. Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (117 S.Ct. 417, 136 LEd2d 347) (1996) (cleaned up). An officer responding to a call that trespassers are throwing a party acts reasonably when he takes an unobstructed path available to partygoers and follows his senses to the party. *See, e.g.*, *Alvarez v. Montgomery Cty.*, 147 F.3d 354, 358-359 (II) (B) (4th Cir. 1998) (officers who walked into back yard at a house party after seeing sign saying "Party in Back" with arrow pointing to back yard acted reasonably). Accordingly, I must respectfully dissent.

The officers in the instant case were dispatched to a residence in response to a complaint of a party being held at a home where the homeowners were believed to be out of town. Upon arrival, the officers immediately gathered information that was

consistent with the presence of a significant party being held in the back yard of the residence. The officers "followed the noise" of the party until the party was visible. They encountered no fence or other obstruction and, indeed, used a path that others had used to access the back yard.[1] This is reasonable.

While the majority and case law show a preference for officers making an initial approach to the front door of a residence, there is no bright-line test or *per se* rule requiring such an action.[2] Indeed, construing the evidence in a manner most favorable to the trial court's findings and judgment,[3] it appears a trip to the front door

---

[1]As the majority notes, the trial court found that the officers took a route that any other partygoer would have taken. Because that finding is supported by some evidence and is not clearly erroneous, it is entitled to our deference. *Cupe v. State*, 327 Ga. App. 642, 644-647 (1) (760 SE2d 647) (2014). *See also State v. Criswell*, 327 Ga. App. 377, 380 (759 SE2d 255) (2014) ("any visitor, including a police officer, may enter the curtilage of a house when that visitor takes the same route as would any guest . . . .").

[2] *Robinette*, 519 U.S. at 39 (in examining the totality of the circumstances to determine reasonableness, "we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry").

[3] *Cupe*, 327 Ga. App. at 645.

2

would have been a wasted act as the homeowners were indeed not home and the

partygoers were in the rear of the house.[4]

---

[4] I see no Constitutional or logical reason to require officers to conduct futile business in the front, when the party is clearly in the back.