**SECOND DIVISION**
**MILLER, P. J.,**
**REESE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 13, 2020**

# In the Court of Appeals of Georgia

A19A2377. NIX v. THE STATE.

MILLER, Presiding Judge.

John Nix, a leader of his church's youth group, engaged in sexual acts with his underage nephew over the course of six years. Images and videos of child pornography, including a naked image of at least one child in Nix's youth group, were also found in his garage. Because of these incidents, a jury found Nix guilty of one count of child molestation (OCGA § 16-6-4) and fourteen counts of the sexual exploitation of children (OCGA § 16-12-100). On appeal, Nix argues that (1) the evidence was insufficient to support the convictions for the sexual exploitation of children; (2) the trial court erred in applying the continuing witness rule; (3) the indictment had a fatal defect; (4) the trial court erroneously applied the rape shield statute; (5) the trial court wrongly denied Nix's request for a severance of the child

molestation count from the other counts; (6) the trial court constructively amended the indictment; (7) there was a fatal variance between the date alleged in the indictment and the proof at trial; and (8) his trial counsel rendered ineffective assistance. We reject all of Nix's claims of error and affirm his convictions and sentence.

Viewed in the light most favorable to the verdicts,[1] the record shows that J. N., Nix's nephew, lived with Nix for some time during 2008 when J. N. was twelve years old. During the summer of that year, at a pool party, Nix asked J. N. to see J. N.'s private parts, at which point J. N. showed them to Nix. A week after the pool party, Nix and J. N. had oral sex. Following that incident, sexual activity between the two would happen "pretty regularly" and would happen "any opportunity [Nix] got." When the two were having sex, Nix would occassionally show J. N. porn depicting girls J. N.'s age or younger. The sexual acts continued until J. N. was eighteen years old. J. N. did not report these activities until July 2015.

In March 2016, Nix's wife handed over two fanny packs to the police, which she found in their garage, that contained various electronic devices including Nix's cell phone and a flash drive. The flash drive contained various videos and images of

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

young pre-teen boys engaging in sexual activites. The flash drive also contained multiple naked "selfies" of Nix. These same "selfies" were also found on Nix's cell phone. The flash drive also contained various short stories depicting sexual relationships between adult men and underage boys. A witness identified two of the pictures found on Nix's cell phone as pictures of her then six-year-old son, a member of Nix's youth group, and one of those pictures showed the boy naked. The witness testified that her son had spent the night at Nix's house and that Nix had swum naked with her son during that stay.

A grand jury indicted Nix on one count of child molestation (OCGA § 16-6-4 (a)) and fourteen counts of the sexual exploitation of children (OCGA § 16-12-100 (b)). For each sexual exploitation count, the indictment alleged that, "on or about the 3rd day of March, 2017," Nix possessed a flash drive containing images and videos of child pornography. The jury found Nix guilty of all charges. The trial court sentenced Nix to a total of fifty-nine years' imprisonment and one year of probation. Nix filed a motion for new trial, which the trial court denied. This appeal followed.

1. Nix first argues that the evidence was insufficient to support the fourteen counts of sexual exploitation of children that were based on his possession of the flash drive containing pictures of child pornography. He argues that the

3

circumstantial evidence that he was the owner of the flash drive was insufficient to exclude every reasonable hypothesis that the flash drive belonged to someone else because other people had equal access to the garage where it was found. Because there was sufficient evidence tying Nix to the flash drive, we conclude that the evidence was sufficient to support these convictions.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence. We determine only whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt, and in doing so we neither weigh that evidence nor judge the credibility of the witnesses.

(Citations and punctuation omitted.) *Barton v. State*, 286 Ga. App. 49 (648 SE2d 660) (2007). To support a conviction based on circumstantial evidence, the evidence "shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6.

> Not every hypothesis is reasonable, and the evidence does not have to exclude every conceivable inference or hypothesis; it need rule out only those that are reasonable. The reasonableness of an alternative hypothesis raised by a defendant is a question principally for the jury, and when the jury is authorized to find that the evidence, though circumstantial, is sufficient to exclude every reasonable hypothesis save

4

that of the accused's guilt, this Court will not disturb that finding unless it is insupportable as a matter of law.

(Citation omitted.) *Debelbot v. State*, 305 Ga. 534, 538 (1) (826 SE2d 129) (2019).

A person commits the offense of sexual exploitation of children when, among other things, he knowingly "possess[es] or control[s] any material which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct." OCGA § 16-12-100 (b) (8). Under Georgia law, "a person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it." (Citation omitted.) *Dickerson v. State*, 304 Ga. App. 762, 765-766 (2) (697 SE2d 874) (2010). Also,

[E]vidence merely showing that contraband was found in the residence occupied by the defendant is insufficient to support a conviction if it affirmatively appears from the evidence that other persons had equal access to the contraband and therefore an equal opportunity to commit the offense.

(Citations omitted.) *Howard v. State*, 291 Ga. App. 386, 388 (662 SE2d 203) (2008).

5

The State presented sufficient evidence specifically tying Nix to the flash drive containing the child pornography images such that a reasonable jury could conclude that he possessed the flash drive. The flash drive was found in Nix's garage inside a fanny pack, and Nix's cell phone was found in a similar fanny pack in the same location. In addition to the child pornography, the flash drive contained multiple nude "selfies" of Nix, and these same photos were also located on Nix's cell phone. Finally, the jury was properly instructed on Nix's equal-access defense, but it necessarily rejected that defense when it returned a guilty verdict. See *Howard*, supra, 291 Ga. App. at 388 ("Whether or not in a given case circumstances [showing equal access] are sufficient to exclude every reasonable hypothesis save the guilt of the accused is *primarily a question for determination by the jury*.") (citation omitted; emphasis in original). We conclude that there was sufficient evidence from which a jury could conclude beyond a reasonable doubt that Nix possessed the flash drive, and thus his challenge to the sufficiency of the evidence fails. See *Tennille v. State*, 279 Ga. 884, 885 (2) (622 SE2d 346) (2005) (evidence was sufficient to demonstrate defendant possessed child pornography when the images were found on defendant's computer and the jury rejected the defendant's equal access defense). Compare *Lindley v. State*, 345 Ga. App. 637, 639-641 (1) (814 SE2d 784) (2018) (physical

6

precedent only) (reversing conviction for possession of child pornography because there was no evidence defendant owned the electronic device, downloaded the images, or was present at the residence where and when the images were downloaded or shared).

2. Nix argues that the trial court erred in applying the continuing witness rule when it refused to allow the jury to have access to the record of text messages between him and J.N. during their deliberations. We agree that the trial court erred by denying the jury access to the record of text messages, but we conclude that the error was harmless.

Normally, "[d]ocumentary or demonstrative evidence admitted without objection goes out with the jury when it retires for deliberations." (Citation omitted.) *Pearson v. State*, 278 Ga. 490, 492 (4) (604 SE2d 180) (2004). However,

> [i]n Georgia the 'continuing witness' objection is based on the notion
> that written testimony is heard by the jury when read from the witness
> stand just as oral testimony is heard when given from the witness
> stand. But, it is unfair and places undue emphasis on written testimony for the
> writing to go out with the jury to be read again during deliberations,
> while oral testimony is received but once.

7

(Citation omitted.) *Gough v. State*, 236 Ga. App. 568, 569-570 (2) (512 SE2d 682) (1999). "What should be withheld from the jury is 'written testimony,' which merely duplicates a witness' oral testimony or substitutes as a written record of his testimony. The proscription on the jury's possession of 'written testimony' does not extend to documents which are themselves relevant and admissible as original documentary evidence in a case." (Citations and punctuation omitted.) *Pearson*, supra, 278 Ga. at 492 (4).

The trial court here concluded that it would violate the continuing witness rule for the jury to be provided with the 455 pages of text messages sent between Nix and J.N. from 2008 until 2015. This was error. The text messages were "original documentary evidence" demonstrating the type of relationship that Nix and J.N. had during the time frame when the crime was committed. There is no indication that the text messages contained testimonial evidence or constituted written versions of each person's testimony, such as would be the case with an affidavit, deposition, or sworn statement. Therefore, the continuing witness rule did not apply, and the text messages should have been sent back with the jury for their review during deliberations. See *Johnson v. State*, 347 Ga. App. 831, 843-844 (3) (821 SE2d 76) (2018) (text messages between defendant and others about a robbery made at the time of the

8

robbery were original documentary evidence of the robbery and were not subject to the continuing witness rule) (physical precedent only).

Nevertheless, an erroneous continuing witness ruling is not grounds for reversal if it is "highly probable that the error did not contribute to the judgment." (Citation omitted.) *Broadnax-Woodland v. State*, 265 Ga. App. 669, 670 (1) (595 SE2d 350) (2004). Nix primarily argues that the jury should have been allowed to review the text messages during deliberations because the texts supported his theories that no sexual relationship occurred and that the allegations were made just after Nix requested payment of a loan from the victim. During trial, however, the defense elicited testimony establishing that the victim's reporting of the allegations of a sexual relationship with Nix occurred at or around the time Nix asked the victim to repay a loan. Details about the nature of the relationship between Nix and the victim were extensively aired during the victim's testimony. The defense also extensively impeached and attacked the victim's credibility and the credibility of the allegations during trial. Finally, many of the relevant text messages between Nix and the victim discussing the victim's motivations to report the allegations were read for the jury during trial. Thus, the text messages would have been largely cumulative of all of the evidence presented at trial and would not have added to the jury's deliberations. In

9

light of this and the other evidence presented at trial, we conclude that the error in prohibiting the text messages from being sent to the jury during their deliberations was harmless. See *Dockery v. State*, 308 Ga. App. 502, 506-507 (4) (707 SE2d 889) (2011) (continuing witness error was harmless because of the evidence of overwhelming guilt and the erroneously admitted evidence was cumulative of the evidence already presented); *Kent v. State*, 245 Ga. App. 531, 533 (3) (538 SE2d 185) (2000) (continuing witness error was harmless because "the evidence contained in the statement was also brought out during the trial and the evidence of guilt was overwhelming" and because the victim was extensively cross-examined about her written statement and any inconsistencies or alterations); *Gough*, supra, 236 Ga. App. at 569-570 (2) (continuing witness error was harmless in part because the statement was also brought out during trial). See also *Cruz v. State*, 347 Ga. App. 810, 816-817 (2) (821 SE2d 44) (2018) (exclusion of evidence of part of a letter was harmless when jury heard pertinent part of the letter during cross-examination).

3. Nix next argues that the indictment was void because it did not indicate the names of the grand jurors or that they had been "selected, chosen, and sworn," as required by OCGA § 17-7-54. Nix, however, has waived this claim.

> Objecting to an indictment for failing to list the names of the grand jurors is an objection only to the form, not the substance, of the indictment. In order to challenge the form of an indictment, the accused must file a written demurrer to, or motion to quash, the indictment before pleading to its merits. The accused waives all exceptions to the mere form of the indictment by failing to urge them in a timely written demurrer or motion to quash.

(Citations omitted.) *Barnett v. State*, 259 Ga. App. 465 (1) (576 SE2d 923) (2003). A review of the record shows that Nix did not raise an objection to the indictment on this basis until his motion for new trial. Since Nix did not timely challenge the form of the indictment at a point in the proceedings when any defect could have been cured, this enumeration of error is waived. See *Daly v. State*, 285 Ga. App. 808, 809-810 (3) (648 SE2d 90) (2007) (challenge to the composition of the grand jury that was raised for the first time in a motion for new trial was waived); *Barnett*, supra, 259 Ga. App. at 465 (1) (oral motion on first day of trial to quash indictment on grounds that it failed to list the names of the grand jurors was an improper and untimely challenge to the indictment).

4. Nix next argues that the trial court erroneously applied the rape shield statute (OCGA § 24-4-412 (a)) to exclude evidence that J.N. had conducted an allegedly consensual sexual relationship with another family member. However, in addition to

excluding this evidence under the rape shield statute, the trial court also excluded this evidence on the entirely separate and independent basis that it was far more prejudicial than probative under OCGA § 24-4-403, and Nix does not challenge the trial court's determination that this evidence was inadmissible under OCGA § 24-4-403. Because the trial court's evidentiary ruling may be sustained on independent grounds, the merits of which are not before us, this enumeration of error raises a moot issue that we cannot address. See *Ambati v. Bd. of Regents*, 313 Ga. App. 282, 283 (721 SE2d 148) (2011) ("Issuing an opinion . . . under these circumstances would be, in essence, rendering an advisory opinion on a moot point.").

5. Nix next argues that the trial court wrongly denied his request for a bifurcated trial and to sever the charge for child molestation from the charges for sexual exploitation of a child. We conclude that a severance was not mandatory and that the trial court did not abuse its discretion in trying the charges together.

> A defendant has a right to severance where the offenses are joined solely on the ground that they are of the same or similar character because of the great risk of prejudice from a joint disposition of unrelated charges. But where the joinder is based upon the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, severance lies within the sound discretion of the trial judge since the facts in each case are likely to be unique. Further, where evidence of one

charge would be admissible in the trial of another, a trial court does not abuse its discretion by denying a motion for severance. If severance is not mandatory, the court must then decide whether severance would promote a just determination of guilt or innocence as to each offense.

(Citations and punctuation omitted.) *Cupe v. State*, 327 Ga. App. 642, 647-648 (2) (760 SE2d 647) (2014).

The charges in this case were not merely joined due to their similar character but were factually connected. The offense underlying the sexual exploitation charges was Nix's possession of the flash drive, and that flash drive was turned over to the police by Nix's wife during the investigation into the offense underlying the child molestation charge. Also, the circumstances underlying the charges of sexual exploitation of a child and child molestation were relevant similar transactions such that evidence of Nix's commission of either type of offense would be admissible as other acts evidence in the trial of the other offense. See OCGA § 24-4-414 (a) ("In a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant."); see also OCGA § 24-4-414 (d) (1) (defining "offense of child molestation" to include child molestation under OCGA § 16-6-4 and sexual

13

exploitation of a child under OCGA § 16-12-100). Thus, severance in this case was not mandatory, and the decision to sever the charges was instead entirely within the trial court's discretion. See *Cupe*, supra, 327 Ga. App. at 647-648 (2).

We also conclude that the trial court did not abuse its discretion in determining that a severance would not have promoted a just determination of guilt or innocence. Nix first points out that the State presented similar transaction evidence demonstrating other incidents where Nix allegedly had sexual contact with other underage boys, and he argues that such evidence was only admissible for the jury's consideration of the child molestation charge and not the sexual exploitation charges. However, the trial court's order allowing this similar transaction evidence made no such distinction or limitation, and we have not found any indication in the record that the trial court only allowed this evidence for the jury's consideration of one charge but not the others. Furthermore, given the broad statutory rule of OCGA § 24-4-414 (a) allowing similar transaction evidence of other offenses involving child molestation, Nix has not shown that any such distinction would have been warranted. This argument thus does not compel reversal on the issue of severance.

Nix further argues that the ability of the State to compel his wife to testify against him provided a justification for severance, but we do not agree. Normally, a

14

person cannot be compelled to testify against his or her spouse in any criminal proceeding, OCGA § 24-5-503 (a), but an exception is made when the defendant is charged with a "crime against the person of a child under the age of 18." OCGA § 24-5-503 (b) (1). Because all of the charges against Nix fell under this exception, the State could have compelled Nix's wife to testify against him for any of these charges, and so a severance would not have made a difference in this respect. See *Peck v. State*, 300 Ga. App. 375, 376-377 (3) (685 SE2d 367) (2009) (sexual exploitation of a child through possession of child pornography constitutes a "crime against the person of a minor child" and thus falls under the exception to the spousal privilege).[2] Thus, the trial court did not abuse its discretion when it denied Nix's request for a severance.

6. Nix next argues that the trial court constructively amended the indictment when it allowed the State to present proof that he possessed the child pornography in March 2016, when the indictment alleged that he had possessed the pornography in

_____

[2] As noted in enumeration four, supra, Nix has not demonstrated that the trial court erred in excluding evidence of the victim's sexual history. Accordingly, we do not address his argument that the differing admissibility of such evidence under the rape shield statute justified a severance.

15

March 2017. Because the State did not specially allege that the date was a material allegation of the indictment, there was no error.

"An indictment cannot be materially amended after the grand jury has returned the indictment into court; any subsequent amendment by the trial court or prosecution that materially affects the indictment is void and cannot serve as the basis for a conviction." (Citation omitted.) *Morris v. State*, 310 Ga. App. 126, 128 (2) (712 SE2d 130) (2011). "An amendment to the indictment can be actual or constructive; a constructive amendment occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment as a result of erroneous jury instructions or a prosecutor's statements to the jury." (Citations and punctuation omitted.) Id.

On the other hand, "[i]t is a long-standing principle of Georgia law that a date or range of dates alleged in an indictment, without more, is not a material allegation of the indictment, and, consequently, unless the indictment specifically states that the alleged dates are material, the State may prove that the alleged crime was committed on any date within the statute of limitations." *Thomas v. State*, ___ Ga. App. ___ (1) (a) (835 SE2d 640) (A19A1195) (2019).

16

Here, it is undisputed that the State did not specially allege in the indictment that the date Nix allegedly possessed the flash drive was material. Thus, the State was not required to prove that the possession occurred on the date listed in the indictment but could instead prove that the possession occurred at any point during the statute of limitations.[3] *Thomas*, supra, ___ Ga. App. at ___ (1) (a). Accordingly, by allowing the State to prove that Nix had the flash drive in his possession on a date other than March 3, 2017, the trial court did not in any way change what the State was required to prove at trial to secure a conviction, and it therefore did not constructively amend the indictment.

Nix nevertheless argues that the date is an inherent and necessary element of all crimes of possession, particularly crimes involving constructive possession, and so the date was necessarily a material fact in this case. We, however, see nothing particularly unique about possession crimes that would make the date an inherent element of the crime. Indeed, we have never held that the date a crime was committed is an inherent element of a possession crime, and we have often held the opposite. See, e.g., *Blackwelder v. State*, 256 Ga. 283, 284 (4) (347 SE2d 600) (1986) (date was

---

[3] Nix does not argue that the evidence of his possession of the flash drive demonstrated that such possession occurred outside the four-year statute of limitations. See OCGA § 17-3-1 (c).

not a material allegation of a charge of possession of illegally taken wildlife); *Thomas*, supra, ___ Ga. App. at ___ (1) (date was not a material allegation of a charge of possession of a firearm by a convicted felon). Accordingly, this enumeration of error lacks merit.

7. Nix similarly argues that the difference between the date alleged in the indictment (March 2017) and the date shown by the evidence at trial (March 2016) created a fatal variance between the indictment and the proof presented at trial. We similarly conclude that any variance between the date alleged in the indictment and the date demonstrated by the proof at trial was not so material as to be fatal.

"Not all differences between an indictment and proof constitute fatal variances. Our courts no longer employ an overly technical application of the fatal variance rule, focusing instead on materiality." (Citations and punctuation omitted.) *Maxwell v. State*, 348 Ga. App. 870, 874 (2) (825 SE2d 420) (2019). "The true inquiry regarding a fatal variance claim is whether there has been such a variance as to affect the substantial rights of the accused." *Holmes v. State*, 291 Ga. App. 196, 199 (2) (661 SE2d 603) (2008). "The variance is only fatal if the allegations fail to meet these two tests: (1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not be taken by surprise, and (2)

the allegations must be adequate to protect the accused against another prosecution for the same offense." (Citation omitted.) Id. For variances based on dates in particular, "if there is a variation between the date alleged and the date proved at trial, the variance does not entitle a defendant to a new trial unless it prejudiced the defense." (Citation and punctuation omitted.) *Adams v. State*, 288 Ga. 695, 699 (2) (707 SE2d 359) (2011).

The indictment in this case clearly put Nix on notice that the basis for the exploitation of children counts was Nix's possession of a flash drive that contained child pornography. There is no basis in the record to believe that Nix's ability to prepare for trial had been impeded or that he was somehow misled or surprised as to the nature of the conduct referred to in the indictment. Instead, Nix's statements in his motion to quash the indictment on unrelated grounds (filed two months before trial), in addition to both his arguments and the State's arguments before the trial court on that motion, make clear that he was well aware of the conduct for which the State sought to prosecute him. Moreover, as noted above, the State did not specially allege in the indictment that the date was material. Accordingly, the misaligned dates did not create a fatal variance. See *Holmes*, supra, 291 Ga. App. at 198-199 (2) (a wrong date alleged in the indictment did not create a fatal variance where the State

19

did not specially allege that the date was material and the defendant was clearly aware of the nature of the charges against him).

8. Nix finally argues that his trial counsel rendered ineffective assistance to the extent that trial counsel failed to preserve any of his enumerations of error on appeal. The only enumeration wherein Nix's challenge was not preserved by trial counsel was his challenge in enumeration three to the form of the indictment for failing to list the names of the grand jury members and for failing to state that the grand jury members were sworn. Nix, however, has failed to demonstrate that he was prejudiced by such failure such that it would have rendered a different result in the proceedings.

> [T]o prevail on a claim of ineffective assistance, appellant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. Appellant must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, an appellate court gives deference to the lower court's factual findings, which are upheld unless clearly erroneous; the lower court's legal conclusions are reviewed de novo.

(Citation omitted.) *Daly*, supra, 285 Ga. App. at 810 (4).

Even assuming that counsel was ineffective for failing to timely challenge the form of the indictment, Nix has not met his burden of showing that any challenge to the form of the indictment would have rendered a different result in the proceedings. Nix has not provided any affirmative evidence that the grand jury was indeed improperly constituted, nor has he cited to any evidence in the record that the jury members were not properly sworn. While Nix points out that there is no evidence in the record affirmatively showing that the jury members were indeed properly sworn, in the context of an ineffective assistance of counsel claim, it is Nix's burden to demonstrate from the record that there was an error instead of merely pointing to the absence of evidence that the proceedings were properly conducted. Without such affirmative evidence of an error, we will not rely on speculation as to what might have happened during the grand jury proceedings. Instead, "we will rely on the presumption in favor of the regularity and legality of all proceedings in the trial court. We will not presume error from a silent record." (Citations omitted.) *McRae v. State*, 252 Ga. App. 100, 103 (5) (555 SE2d 767) (2001). Accordingly, Nix has not demonstrated that any challenge to the indictment would have possibly led to a dismissal of the charges (as opposed to a mere correction of the record or a superseding indictment being entered) or otherwise have had a material impact on the

outcome of the proceedings. Consequently, he has failed to demonstrate that he suffered any prejudice by his trial counsel's failure to challenge the indictment on these grounds, and so his ineffective assistance claim fails.

As outlined above, Nix has not demonstrated that the trial court committed reversible error, and so we affirm his convictions and sentence.

*Judgment affirmed. Reese and Hodges, JJ., concur.*