A08A0270. HOWARD v. THE STATE.

(662 SE2d 203)

ADAMS, Judge.

John Howard was convicted of possession of cocaine and marijuana, both with intent to distribute. Following the denial of his motion for new trial, Howard appeals and contends the evidence was insufficient to support the verdict. He argues the evidence was only circumstantial and it only showed he was present at the scene of the crime.

Construed in favor of the verdict, the evidence shows that Detective K. C. Ashley of the City of Decatur Police Department was assigned to the "High Intensity Drug Area Task Force," which was designed to target large narcotics distributors in known high drug "corridors," including an area surrounding Candler Road in DeKalb County. Ashley was accepted by the court without objection as an expert in dealing with street level narcotics.

In April 2005, Ashley received information from a paid, reliable, confidential informant about Jamel Reymond, and Ashley, acting undercover, began to purchase small amounts of narcotics from Reymond, including marijuana, powder cocaine, and crack cocaine. When Ashley eventually asked to buy larger quantities, Reymond said his "brother J" could provide some, and he led Ashley to 1889 Glenmar Drive in DeKalb County, less than a mile from Reymond's own home. When the two men got out of their car and approached the house, a man at the house indicated that only Reymond could come in, and Ashley returned to the car. Reymond returned and said that the man was nervous but that he had the drugs. Ashley gave Reymond the purchase money ($800), and Reymond went back in the house. He returned with drugs and a scale, which he used to measure 29 grams of cocaine — slightly more than an ounce. Reymond went back inside briefly, then the two men returned to Reymond's home.

Ashley began to question Reymond about purchasing a kilogram of cocaine and eventually Ashley set up a meeting for August 22, 2005 at a motel with his "brother J." Although the police had surveillance set up to monitor the transaction, Reymond did not show up and nothing happened that day. The next day, Ashley contacted his confidential informant to set up a controlled purchase at the Glenmar Drive address in order to obtain a search warrant. The confidential informant went into the house and purchased a $50 rock of cocaine, and Ashley then obtained a no-knock search warrant.

Ashley and other officers executed the warrant on August 26, 2005 at approximately 9:45 p.m. Before the search, the officers became familiar with the general layout, including the location of

bathrooms and the kitchen. The officers split into two teams: the entry team was responsible for breaching the door and securing people and weapons; the containment team was responsible for surrounding the house to make sure no one came out or threw drugs out the windows. Ashley was on the containment team.

As officers entered the house, Ashley ran to the back of the house. A light was on in a bathroom, the window was open and not obscured, and Ashley could clearly see in. He saw a man come into the bathroom and heard what sounded like the toilet lid being shut, although he did not hear any flushing. Another detective in the back yard also saw a person in the bathroom. When Ashley went inside shortly thereafter, he found that John Howard had been apprehended near the bathroom, and he identified Howard as the man he had seen in the bathroom. Officers who searched the house found three bags of cocaine and one bag of marijuana in the toilet tank. The cocaine weighed 217.1 grams, and the marijuana weighed 13.8 grams.

Six adults were in the house and one person was in a car in the driveway; each person was arrested. Three children were also in the house. The ensuing search revealed a bag of marijuana under the living room sofa; currency under the bed in bedroom number 2; a bag containing 63.2 grams of cocaine in the kitchen freezer; currency in one person's pocket; three drivers' licenses, including one for John Howard; a loaded 12-gauge shotgun in bedroom number 2; a .45 caliber handgun in a car located in the driveway; Howard's birth certificate on the bed in bedroom number 2; other ammunition; documents identifying other defendants in bedroom number 5; 154.3 grams of cocaine and marijuana in bedroom number 5; a digital scale in bedroom number 2; and other digital scales throughout the house. John Howard was charged with trafficking cocaine and possession of marijuana with intent to distribute. Four others were charged with similar offenses, and two were charged with loitering for drugs.

Testimony at trial established that the house was titled in the names of Howard's parents, Milton Howard, Sr., and Kathy Gibson. Milton Howard, Jr., John Howard's brother, and Horace Gibson, Kathy's brother, also reside there. But John Howard, who was 25 years old and unemployed at the time of trial, is often there and keeps music recording equipment there, according to Joseph Daniel, Howard's first cousin, who was also arrested that day. Daniel testified that he had gone to the house on the day of the search intent on getting high on cocaine. Appellant Howard was the source of his cocaine that day. And he and Howard used marijuana and cocaine that Howard provided. Friends came by that day to get high as well. Daniel testified that his cousin, Milton, Jr., who was employed, did not possess or sell drugs. And his aunt and uncle, Kathy Gibson and

Milton Howard, Sr., did not allow people to use drugs when they were at home. Daniel also testified that his aunt and uncles did not sell drugs.

David Bailey who was also arrested that day, testified that he is a drug dealer. Bailey, who knew Howard through Jamel Reymond, testified that he purchased cocaine from Howard for resale to the public. Bailey identified Howard in court and said that he is the only person he knew who was selling cocaine from the house. Bailey went to the Glenmar Drive house on the day of the arrests in order to purchase 31 grams of cocaine from Howard. He saw Howard in possession of marijuana and cocaine that day and saw him sell cocaine. He also linked Howard to the drugs found in the toilet tank.

The evidence was sufficient to support the conviction for possession of marijuana and cocaine with intent to distribute. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Howard contends the evidence was circumstantial and that it did not exclude every other reasonable hypothesis save that of the guilt of the accused and that the evidence only showed his presence at the scene.

> A finding of constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity. Evidence of mere presence at the scene of the crime, and nothing more to show participation of a defendant in the illegal act, is insufficient to support a conviction. Similarly, evidence merely showing that contraband was found in the residence occupied by the defendant is insufficient to support a conviction if it affirmatively appears from the evidence that other persons had equal access to the contraband and therefore an equal opportunity to commit the offense. And, where, as in this case, the conviction is based on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt but shall exclude every other *reasonable* hypothesis save that of the guilt of the accused. Whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused is *primarily a question for determination by the jury.*

(Punctuation omitted; emphasis supplied.) *Swanger v. State*, 251 Ga. App. 182, 183-184 (1) (554 SE2d 207) (2001). See also OCGA § 24-4-6.

In this case there was direct evidence that Howard sold cocaine; he was observed in the bathroom doing something at the toilet in response to the police entry; a large quantity of cocaine and marijuana was found in the toilet tank; a witness linked him to those

drugs; several digital scales were found around the house; and two witnesses testified that no one else in the house sold drugs. Although Daniel and Bailey were co-defendants, their testimony was corroborated by each other's testimony and by other witnesses and evidence found at the scene. See *Hill v. State*, 290 Ga. App. 140, 142 (1) (658 SE2d 863) (2008) ("[T]he testimony of one accomplice may be used to corroborate that of another.") (punctuation and footnote omitted).

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED MAY 2, 2008.

*Jonathan R. Melnick*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.