**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 26, 2015**

# In the Court of Appeals of Georgia

A14A1558. LOPEZ-VASQUEZ v. THE STATE.

BARNES, Presiding Judge.

Jamie Lopez-Vasquez appeals from the order of the trial court denying his motion for new trial following his conviction for trafficking in methamphetamine and possession of methamphetamine. Lopez-Vaquez contends on appeal that the trial court erred in allowing the State to treat his co-defendant as a hostile witness, improperly restricting his closing argument, and also erred in its jury charge on the credibility of a witness. He also contends that trial counsel was ineffective and that the evidence was insufficient to sustain his conviction. Upon our review, we affirm.

1. When a criminal defendant challenges the sufficiency of the evidence supporting his conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

It is the duty of the jury, not this Court, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citations and punctuation omitted) *Lomax v. State*, 319 Ga. App. 693 (738 SE2d 152) (2013).

So viewed, the evidence demonstrates that an agent with the Drug Enforcement Administration ("DEA") received information that there was a large quantity of methamphetamine located in a suspected "stash" house on Glendale Circle in Smyrna. The DEA and Marietta-Cobb-Smyrna Narcotics Unit surveilled the house, and on September 26, 2012, they observed Lopez-Vasquez leaving the house. A DEA agent stopped Lopez-Vasquez and explained to him that they were investigating suspected drug activity at the house. The agent accompanied Lopez-Vasquez to the house and, after ascertaining that Lopez-Vasquez and Martin Munoz-Olveda, a co-defendant, lived in the house, requested their permission to search the residence, which the men granted. Upon entering the residence, the agents discovered digital scales and "a large amount of methamphetamine residue" on the kitchen table. When the men said they could not open the locked bedroom doors and refused consent to search the rooms,

the agents obtained a search warrant and retrieved 17 pounds of methamphetamine and other drug apparatus from one of the bedrooms. The room also contained papers with Munoz-Olveda's name. The agents also discovered a drink cooler containing methamphetamine oil in the garage. Lopez-Vasquez told agents that he slept on a sofa in the living room and did not use any of the bedrooms.

At trial, a DEA agent testified that a "stash" house is used to hold drugs for future distribution and that it is typically controlled and guarded by people staying there. He further testified that it was common for drug trafficking organizations to "rent a property and put a person in there to guard the stash house, and the provisions that are provided for that person . . . [can] be a monetary stipend to help them with paying the rent or paying for the utilities." The agent testified that, as was typical with stash houses, the house was sparsely decorated and it had a security camera, and this was done so that the operation could be easily moved to another location.

Munoz-Olveda was tried jointly with Lopez-Vasquez, but entered a negotiated plea of guilty during the trial in exchange for his testimony as a State's witness. He was subsequently declared a hostile witness, and admitted during his testimony that the men's job was to watch over the drugs in the stash house, and that Lopez-Vasquez

knew that the drugs were in the house and had agreed to guard the drugs in exchange for monetary help with bills.

Lopez-Vasquez contends that the evidence was insufficient to sustain his convictions for possession of and trafficking in methamphetamine. He contends that the evidence only shows that he "was guilty of being poor and living in a house that he had no control over. We do not agree.

> Possession of contraband may be actual or constructive. Moreover, joint constructive possession with another will sustain a conviction for possession of contraband. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. The law recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons shared actual or constructive possession of a thing, possession is joint.

(Citation omitted). *Cochran v. State*, 300 Ga. App. 92, 94 (1) (a) (684 SE2d 136) (2009), overruled in part on other grounds by *Hamm v. State*, 294 Ga. 791, 795 (2) (756 SE2d 507) (2014). "Any person who knowingly . . . has possession of 28 grams or more of methamphetamine . . . commits the felony offense of trafficking in

4

methamphetamine[.]" OCGA § 16-13-31 (e) (2008).[1] "The knowledge element of a violation of a criminal statute can be proved by demonstrating either actual knowledge or deliberate ignorance of criminal activity." (Citations and punctuation omitted.) *Able v. State*, 312 Ga. App. 252, 258 (3) (718 SE2d 96) (2011). Even though there was no evidence that Lopez-Vasquez was in actual physical possession of the methamphetamine, if he knowingly had both the power and intention at a given time to exercise dominion over it, then he had constructive possession. *Wilson v. State*, 256 Ga. App. 741, 742 (1) (569 SE2d 640) (2002). "While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." (Citation and punctuation omitted.) *Woods v. State*, 224 Ga. App. 52, 55 (4) (479 SE2d 414) (1996).

---

[1] The General Assembly amended subsection (e) of OCGA § 16-13-31, effective July 1, 2013, see Ga. L. 2013, p. 222, § 4/HB 349, to omit the word "knowingly," but that amendment does not apply in the present case because the underlying offense occurred in 2012. See id. § 21 ("This Act shall become effective on July 1, 2013, and shall apply to offenses which occur on or after that date. Any offense occurring before July 1, 2013, shall be governed by the statute in effect at the time of such offense.")

Here, the evidence demonstrated that Lopez-Vasquez lived at the house where the methamphetamine was found, that he was present at the scene when the drugs were discovered, and that the methamphetamine residue was found in the kitchen, and methamphetamine oil in the garage, both of which were common areas over which a resident might exercise control. The State was not required to show that Lopez-Vasquez was in sole or actual possession of the methamphetamine, rather, that he was in joint constructive possession of the contraband. *Cochran*, 300 Ga. App. at 94-95 (1) (a); *Kahn v. State*, 235 Ga. App. 229, 231 (1) (b) (509 SE2d 137) (1998) (while evidence that the defendant-owner or lessee shared premises with another does not demand a conviction, it may authorize the jury to find that the defendant was in at least joint possession of the contraband).

Moreover, the evidence showed that Lopez-Vasquez was more than merely present at the scene. In addition to showing that he lived at the residence in question, the evidence also demonstrated that Lopez-Vasquez knew that large quantities of methamphetamine were present in the residence and actively participated in guarding the methamphetamine in exchange for monetary benefit. "Whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused is primarily a question for determination by the jury." (Citation

6

and emphasis omitted.) *Howard v. State*, 291 Ga. App. 386, 388 (662 SE2d 203) (2008). Based on the evidence previously discussed, the jury was entitled to reject as unreasonable Lopez-Vasquez's defense that he merely lived in the house and had no control over what occurred there. See *Kirby v. State*, 275 Ga. App. 216, 217-218 (620 SE2d 459) (2005) (although defendant may not have actively participated in the manufacturing process, the evidence authorized the guilty verdict for aiding in the manufacturing by knowingly providing the location). See also OCGA § 16-2-20 (parties to a crime).

Accordingly, we find that there was sufficient evidence to find Lopez-Vasquez guilty of the crimes charged.

2. Lopez-Vasquez next contends that the trial court erred in allowing the State to treat one of its witnesses, Lopez-Vasquez's co-defendant, Munoz-Olveda, as a hostile witness, thereby allowing the State to ask leading questions. We disagree.

As previously noted, Lopez-Vasquez and his co-defendant, Munoz-Olveda, were initially tried together, but during the trial, Munoz-Olveda decided to plead guilty. As part of the plea agreement, Munoz-Olveda agreed to testify truthfully about the methamphetamine operation and testify against Lopez-Vasquez, but his testimony

7

was not consistent with the proffer the State was given.[2] Instead, Munoz-Olveda professed ignorance about any of the items discovered during the search, and was evasive and unresponsive in his testimony. As a result, at the State's request, the trial court permitted Munoz-Olveda to be treated as a hostile witness. Lopez-Vasquez did not object to the ruling, and "[a] defendant cannot acquiesce in a trial court's ruling below and then complain about that ruling on appeal. Acquiescence deprives him of the right to complain further[;] thus, the issue is waived for purposes of appeal."(Citations and punctuation omitted.) *McNabb v. State*, 292 Ga. App. 395, 399 (2) (664 SE2d 800) (2008).

Moreover, when a witness demonstrates reluctance to testify about a crime, a trial court has "great latitude to permit the [prosecutor] to treat [the witness] as a hostile witness and propound leading questions." *Knight v. State*, 266 Ga. 47, 49 (4) (b) (464 SE2d 201) (1995). Likewise, "[w]hether leading questions are permitted is within the trial court's discretion, and exercise of that discretion will not be interfered with by the appellate courts unless the discretion is abused." (Citations omitted.) Id. See *Culler v. State*, 277 Ga. 717, 721 (5) (594 SE2d 631) (2004) ("A trial court has

---

[2] It is unclear from the record what the proffered testimony was and how it differed from Munoz-Olveda's actual trial testimony.

8

discretion to permit leading questions on direct examination when a witness is reluctant, hostile, or overly nervous."); see also OCGA§ 24-6-611 (c).[3]

In these circumstances, we discern no abuse of discretion on the part of the trial court.

3. Lopez-Vasquez next contends that the trial court erred in restricting his closing argument. We note initially that although Lopez-Vasquez asserts that the trial court erred in prohibiting him from arguing that the only monetary benefits Lopez-Vasquez had received in relation to the methamphetamine operation was that he enjoyed the benefit of having household expenses paid, his perfunctory argument on appeal consists entirely of the alleged error. He does not assert any harm from the trial court's ruling, nor does he provide any legal authority or argument for this asserted error. Thus any claim of error arising from this issue has been deemed abandoned. See Court of Appeals Rule 25 (c) (2).

Even if properly enumerated, while, "[t]he range of discussion during closing argument is. . . very wide [,]. . . counsel should not go outside the facts appearing in the case and lug in extraneous matters as if they were a part of the case. What the law

---

[3] Lopez-Vasquez was tried after January 2013, so our new evidence Code applies. Former OCGA § 24-9-63 is now codified in OCGA § 24-6-611, enacted by Ga. L. 2011, p. 99, § 2/HB 24.

condemns is the injection into the argument of extrinsic and prejudicial matters which have no basis in the evidence." (Citations and punctuation omitted.) *Conner v. State*, 251 Ga. 113, 122-123 (6) (303 SE2d 266) (1983).

The record demonstrates that the trial court interrupted defense counsel during closing and cautioned him that his argument was potentially confusing to the jury and was "over the line" when he asserted that there was a distinction between giving safe haven to drugs and merely benefitting from the knowledge that someone else in the residence was giving safe haven to the drug. Defense counsel had argued that in the first instance, a party was guilty of a crime, but in the second, he was not. The trial court advised defense counsel that in either case, the party was guilty and could not "take the benefit of ill-gotten goods" and that he should "get away" from that argument. Defense counsel responded that he would "move on for now, but asked to be heard in the matter later. After the charge conference, defense counsel requested that he be allowed to preserve an objection to the trial court's restriction of his argument.

"[T]he trial court has discretion to determine the range of proper closing argument."(Punctuation and footnote omitted.) *Lipsey v. State*, 287 Ga. App. 835, 838 (3) (652 SE2d 870) (2007). It is not error for a trial court to restrict an argument that

10

misleads or confuses the law. See *Johnson v. State*, 186 Ga. App. 891, 892 (1) (369 SE2d 48) (1988) (trial court did not err in interrupting defense counsel's closing argument when counsel misstated law); *Brown v. State*, 319 Ga. App. 680, 683 (3) (738 SE2d 132) (2013) ("In limiting Brown's closing argument, the trial court correctly determined that it is the court's responsibility to charge the law.")

Accordingly, we discern no abuse of the trial court's discretion under these circumstances.

4. Likewise, we find no error in the trial court's jury charge on impeachment of a witness. Although Lopez-Vasquez contends that the trial court should have included in its charge on impeachment that the witness could be impeached by a prior felony conviction,

> when an instruction upon the subject of impeachment is abstractly correct, and not apparently prejudicial, the fact that fuller instructions upon the subject could properly have been given will not require the grant of a new trial, in the absence of a written request calling the attention of the court to the propositions which have been omitted and which it is contended are material.

(Citations and punctuation omitted.) *Gee v. State*, 110 Ga. App. 439 (2) (138 SE2d 700) (1964). See *Sanders v. State*, 67 Ga. App. 706 (4) (21 SE2d 276) (1942) (it was

11

not reversible error to fail, without request, to charge as to a particular mode or method of impeachment.)

The record does not reflect, nor does Lopez-Vasquez assert, that he requested that the impeachment charge include that a party could be impeached by a prior felony conviction.

Accordingly, this enumeration fails.

5. Lopez-Vasquez also contends that trial counsel was ineffective for failing to object to the trial court's ruling that his co-defendant, Munoz-Olveda, could be treated as a hostile witness. We do not agree.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). As we found in Division 2, the trial court did not err in holding that Munoz-Olveda could be treated as a hostile witness, and consequently, any objection to this instruction would have lacked merit. And "[t]he failure to pursue a futile

12

objection "does not amount to ineffective assistance." *Ventura v. State*, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008). Because Lopez-Vasquez has failed to meet his burden of proving that his trial counsel's performance was deficient, he cannot maintain a claim of ineffective assistance of counsel.

*Judgment affirmed. Boggs and Branch, JJ., concur.*