**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).

**June 3, 2020**

# In the Court of Appeals of Georgia

A20A0337. BROWN v. THE STATE.                    DO-013 C

DOYLE, Presiding Judge.

Following a jury trial, Maverick Brown was convicted of trafficking in marijuana,[1] possession of marijuana with intent to distribute (two counts),[2] conspiracy to commit a violation of the Georgia Controlled Substances Act,[3] and possession of a firearm by a convicted felon.[4] Brown now appeals from the denial of his motion for new trial, contending that (1) the evidence was insufficient to support the guilty

---

[1] OCGA § 16-13-31 (c) (1).

[2] OCGA § 16-13-30 (j).

[3] OCGA § 16-13-33.

[4] OCGA § 16-11-131 (b). For purposes of sentencing, the two possession with intent to sell counts and the conspiracy to commit a violation of the Georgia Controlled Substances Act merged into the trafficking count.

verdict, (2) the jury's verdict is contrary to and strongly against the weight of the evidence, and (3) the trial court committed plain error by failing to instruct the jury that knowledge of the weight of marijuana was an essential element of the trafficking offense. Finding no reversible error, we affirm.

Construed in favor of the verdict,[5] the evidence shows that the Georgia Bureau of Investigation conducted a video and telephone surveillance operation of Tyson Brown (Maverick's son), who was suspected of trafficking in marijuana. After viewing activity and intercepting conversations indicating that Tyson[6] was selling marijuana from his house and using another location as a "stash house," officers executed search warrants on the same day at the two residences: 102 King Bee Drive (stash house) and 117 Jim Lee Drive (Tyson's house) in Floyd County. At the Jim Lee location, officers encountered Tyson in the process of flushing marijuana down the toilet and throwing a one-pound bag out a bathroom window; officers also found approximately $37,000 in cash in a bag under Tyson's bed. At the King Bee location, officers encountered Maverick Brown in the interior hallway of the two-bedroom house that smelled of marijuana. In the master bedroom night stand, officers

_____

[5] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[6] For clarity, we refer to the Brown family members by their first names.

2

discovered Maverick's identification card, prescription pills, and mail — all of which identified the King Bee location as his address. In the master bedroom closet, officers found two handguns, ammunition, and a safe that was "stuffed pretty full" of bundles of cash totaling approximately $90,000. In the closet of the spare bedroom at the King Bee residence, officers found two duffel bags containing a total of fourteen plastic bags containing a total of twelve pounds of marijuana.

Based on the investigation and the results of the search warrants, Maverick was charged as part of a multi-count indictment accusing Maverick, Tyson, and a local police officer[7] of conspiring to traffic in marijuana. Following a jury trial, Maverick was found guilty of trafficking in marijuana, possessing marijuana with intent to distribute, possessing more than one ounce of marijuana, conspiring to traffic in marijuana, and possessing a firearm while a convicted felon. Maverick unsuccessfully moved for a new trial, and after the trial court granted his motion for an out-of-time appeal, he filed this appeal.

1. Maverick contends that the evidence was insufficient to support the verdict, making several arguments: (a) there was insufficient evidence of possession of the

---

[7] Tyson was accused of bribing the police officer to apprise him of police activity and avoid detection.

3

marijuana and guns because others had equal access to them, (b) the State failed to prove his knowledge of the weight of the marijuana, and (c) there was no evidence that he was part of a conspiracy. None of these arguments warrant reversal.

When an appellate court reviews the sufficiency of the evidence,

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[8]

(a) *Evidence of marijuana possession despite equal access by others*. Maverick contends that the State failed to prove that he possessed the marijuana, particularly in light of equal access to the house by others including his wife. We disagree.

[If, as here] the State provides no direct evidence of actual possession, a conviction may be sustained with proof of constructive possession. A finding of constructive possession must be based upon

---

[8] (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

4

some connection between the defendant and the contraband other than mere spatial proximity. Constructive possession exists [if] a person though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing. If the State presents evidence that a defendant owned or controlled premises where contraband was found, it gives rise to a rebuttable presumption that the defendant possessed the contraband. Although this presumption may be rebutted by showing that others had access to the premises, the equal access doctrine applies to rebut the presumption of possession *only [if] the sole evidence of possession of contraband found on the premises is the defendant's ownership or possession of the premises*. Although mere presence at the scene is not sufficient to convict one of being a party to a crime, criminal intent may be inferred from conduct before, during, and after the commission of a crime.[9]

At the outset, we note that there was direct evidence that Maverick lived at the King Bee residence and slept in the master bedroom, which had a closet where the safe and guns were found. To rebut the presumption that he possessed the contraband in the house, Maverick points out that other family members had access to the home, and his wife's belongings were found along with his in the master bedroom and closet area. Thus, he argues, they had equal access to the contraband in the house, and the

---

[9] (Punctuation omitted; emphasis supplied.) *Winn v. State*, 345 Ga. App. 359, 361-362 (1) (813 SE2d 400) (2018), quoting *Johnson v. State*, 338 Ga. App. 500, 502 (790 SE2d 291) (2016).

5

State did not prove his possession of the contraband.[10] But there was evidence connecting Maverick to the contraband other than his mere presence at the residence. For example, Maverick strenuously objected when police attempted to open the safe found in his closet. This conduct was direct evidence that Maverick asserted control or dominion over the safe and that he knew it contained incriminating evidence — approximately $90,000 in cash from drug transactions. Further, the safe and guns were found along with Maverick's clothing in his personal closet adjoining the bedroom where he slept.[11] In this way, the evidence differs from other cases in which the only evidence of possession was the defendant's mere presence in a house with nothing more connecting him to the contraband found elsewhere in the house.[12] Moreover, there was direct video evidence showing Maverick making a delivery of

---

[10] See, e.g., *Stevens v. State*, 245 Ga. App. 237, 238-239 (1) (537 SE2d 688) (2000).

[11] Cf. *Mantooth v. State*, 335 Ga. App. 734, 736 (1) (a) (783 SE2d 133) (2016) ("As long as there is slight evidence of access, power, and intention to exercise control or dominion over the contraband, the question of fact regarding constructive possession remains within the domain of the trier of fact.").

[12] Compare *Stevens*, 245 Ga. App. at 238 (1) (reversing a drug possession conviction because "[t]he room where Ms. Stevens was found asleep contained nothing more than a 'couple of baby items'; [n]o drugs were found on her person or in the room; [and t]he residence was not leased in her name.").

a bag to Tyson's house shortly after Tyson requested that marijuana be retrieved from the stash house. Although police did not verify the contents of the particular bag, the bag was similar to other duffel bags containing marijuana found at the stash house. Thus, taken as a whole and viewed in the light most favorable to the verdict, the evidence sufficiently connected Maverick to the cash, weapons, and marijuana to authorize a finding that he constructively possessed them.[13]

(b) *Knowledge of the weight of marijuana*. Maverick was accused of trafficking in marijuana that requires possessing an amount exceeding ten pounds,[14] and the indictment alleged that Maverick "knowingly possess[ed] more than 10 pounds and

---

[13] See *Blair v. State*, 216 Ga. App. 545, 546 (1) (455 SE2d 97) (1995) ("If the totality of the evidence is sufficient to connect defendant to possession of drugs, even though there is evidence to authorize a contrary finding, the conviction will be sustained.") (punctuation omitted). See also *Clewis v. State*, 293 Ga. App. 412, 415 (2) (667 SE2d 158) (2008) ("[T]he equal access doctrine applies to rebut the presumption of possession only [if] the *sole* evidence of possession of contraband found on the premises is the defendant's ownership or possession of the premises.") (emphasis in original ); *Howard v. State*, 291 Ga. App. 386, 388 (662 SE2d 203) (2008) (explaining that for a conviction based on circumstantial evidence, "the proved facts shall not only be consistent with the hypothesis of guilt but shall exclude every other reasonable hypothesis save that of the guilt of the accused. Whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused is primarily a question for determination by the jury.") (citation, punctuation, and emphasis omitted).

[14] See OCGA § 16-13-31 (c).

less than 2,000 pounds of marijuana. . . .” Based on this, Maverick argues that the

State failed to prove that he knew that he possessed more than ten pounds of

marijuana. But OCGA § 16-13-54.1 provides that if

> an offense in this part measures a controlled substance or marijuana by
> weight or quantity, the defendant's knowledge of such weight or
> quantity shall not be an essential element of the offense, and the [S]tate
> shall not have the burden of proving that a defendant knew the weight
> or quantity of the controlled substance or marijuana in order to be
> convicted of an offense.

Therefore, Maverick's knowledge of the specific weight of the marijuana was not an

essential element,[15] and based on the analysis above in Division 1 (a), the evidence

was sufficient to support a finding that Maverick knowingly possessed the marijuana

found at his residence. That it turned out to be 12 pounds sufficed to support a finding

of guilt for possessing a trafficking amount under OCGA § 16-13-31 (c).

---

[15] See *Scott v. State*, 295 Ga. 39, 41-42 (2) (757 SE2d 106) (2014) (explaining that in 2013, the General Assembly deleted the word "knowingly" from OCGA § 16-13-31). The offense in this case was committed in 2017. The indictment alleged that the date of the offense was an essential element, but it did not allege that knowledge was an essential element. Maverick makes a separate argument about the wording of the indictment and the jury instructions, which we address below in Division 3.

(c) *Evidence of Maverick's participation in a conspiracy*. Maverick also challenges the sufficiency of the evidence that he was part of a conspiracy to traffic in marijuana. We disagree.

> A person commits the offense of conspiracy to commit a crime [if] he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy. In order for a conspiracy to exist, there must be an agreement between two or more persons to commit a crime. Such agreement need not be express, nor does it require a "meeting of the minds" to the same degree necessary to form a contract; all that is required is a tacit mutual understanding between persons to pursue a common criminal objective. In the context of narcotics trafficking, courts have sometimes inferred such a tacit agreement even [if] participants had no direct contact with one another, [if] there was evidence that each defendant knew or had reason to know the scope of the criminal enterprise[] and had reason to believe that their own benefits derived from the operation were dependent upon the success of the entire venture.[16]

As noted above, the evidence supported a finding that Maverick knowingly helped store a large quantity of marijuana at his residence, and there was other evidence that his son Tyson admitted to police that he used the King Bee residence

---

[16] (Citations and punctuation omitted.) *Griffin v. State*, 294 Ga. 325, 327 (751 SE2d 773) (2013).

9

as a stash house. Further, there was evidence that Maverick helped respond to a request by Tyson to bring a bag containing approximately a pound of marijuana to Tyson's residence. Thus, there was evidence that Maverick actively participated in an ongoing trafficking operation by warehousing the marijuana at his residence and providing it to his son for sale.

2. Maverick also makes a perfunctory argument that the guilty verdict was contrary to the principles of justice and decidedly and strongly against the weight of the evidence.

> It is well settled that, even [if] the evidence is legally sufficient to sustain a conviction, a trial judge may grant a new trial if the verdict of the jury is contrary to the principles of justice and equity, or if the verdict is decidedly and strongly against the weight of the evidence. [If] properly raised in a timely motion, these grounds for a new trial — commonly known as the general grounds — require the trial judge to exercise a broad discretion to sit as a "thirteenth juror." Further, in exercising that discretion, the trial judge must consider some of the things that he cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence. Although the discretion of a

trial judge to award a new trial on the general grounds is not boundless it nevertheless is, generally speaking, a substantial discretion.[17]

Here, the trial court's order reflects that it considered the entirety of the trial evidence and appropriately exercised its discretion in denying Maverick's motion for new trial on the general grounds.[18] Accordingly, this enumeration is without merit.

3. Last, Maverick contends that the trial court committed plain error by failing to instruct the jury that his knowledge of the specific weight of the marijuana was not an essential element of the offense. In light of the clear wording of OCGA § 16-13-54.1, which states that knowledge of weight is not an essential element of the offense of trafficking, we disagree.

With respect to the trafficking count, the court instructed the jury by reading the indictment:

> [T]he grand jury accuses Maverick Brown . . . with the offense of trafficking in marijuana, for that the said accused on the 8th day of March, 2017, said date being a material element of the offense, in [Floyd County], did unlawfully then and there knowingly possess more than 10

---

[17] (Citations and punctuation omitted.) *Tripp v. State*, 349 Ga. App. 164, 173 (3) (825 SE2d 560) (2019).

[18] See id. at 174 (3).

11

pounds and less than 2,000 pounds of marijuana, contrary to the laws of this State.

Based on OCGA § 16-13-54.1, the court also instructed the jury that:

> As to the element of weight of marijuana alleged . . . the State likewise has the burden of proof. But, when an offense measures . . . marijuana by weight or quantity, the defendant's knowledge of such weight or quantity shall not be an essential element of the offense, and the State shall not have the burden of proving that a defendant knew the weight or quantity of the . . . marijuana in order to be convicted of an offense.

Relying on the wording of the indictment, Maverick argues that the trial court committed plain error by not instructing the jury that the State had to prove that he knew the amount of marijuana he possessed.

To demonstrate plain error, Maverick must meet the following test.

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the

12

error seriously affects the fairness, integrity or public reputation of judicial proceedings.[19]

Here, as a threshold matter, it is clear that under OCGA § 16-13-54.1, Maverick's knowledge of the weight of marijuana that he possessed was not a material element of the crime of trafficking. Even so, it is true that, as Maverick argues,

> an unnecessary description of an unnecessary fact averred in an indictment need not be proved, [but] in criminal law even an unnecessarily minute description of a necessary fact must be proved as charged. If the indictment sets out the offense as done in a particular way, the proof must show it so. No averment in an indictment can be rejected as surplusage which is descriptive either of the offense or of the manner in which it was committed. All such averments must be proved as laid.[20]

In this case, the indictment does not add a specific knowledge element or description; rather, it stated that Maverick's possession had to be knowing. This is

---

[19] (Punctuation and emphasis omitted.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011), quoting *Puckett v. United States*, 556 U.S. 129, 135 (II) (129 SCt 1423, 173 LE2d 266) (2009).

[20] (Punctuation omitted.) *Whaley v. State*, 337 Ga. App. 50, 56-57 (3) (785 SE2d 685) (2016), quoting *Ford-Calhoun v. State*, 327 Ga. App. 835, 836 (1) (761 SE2d 388) (2014).

13

demonstrated by the language of the indictment, which expressly made the date of the offense a material element of the offense but did not make the specific knowledge of weight a material element — ". . . for that the said accused on the 8th day of March, 2017, said date being a material element of the offense, in [Floyd County], did unlawfully then and there knowingly possess more than 10 pounds . . . of marijuana, contrary to the laws of this State." The separation of the date from the descriptor "knowingly" shows that the indictment did not impose a knowledge element specific to the weight of marijuana. Consistent with this, the trial court's instructions properly recounted the elements of the offense and explained that specific knowledge of the weight was not an element of the offense. There was no risk that the jury would conclude that an otherwise material element did not have to be proved.[21] Accordingly,

---

[21] Compare *Quiroz v. State*, 291 Ga. App. 423, 427 (3) (662 SE2d 235) (2008) (reversing the denial of a motion for new trial because the trial court's instruction "could have led the jury to conclude that [an] allegation of the indictment, even though material in the eyes of the law, did not have to be proven beyond a reasonable doubt").

because there was no "clear or obvious" legal defect in the proceedings,[22] Maverick

cannot demonstrate plain error warranting reversal.

*Judgment affirmed. McFadden, C. J., and Hodges, J., concur.*

---

[22] See *Cheddersingh v. State*, 290 Ga. 680, 684-685 (2) (724 SE2d 366) (2012) ("[T]he United States Supreme Court has said that plain error includes that which is so plain the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.").