**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 30, 2020**

# In the Court of Appeals of Georgia

A20A1355. NAILS v. THE STATE.                                    DO-013 C

DOYLE, Presiding Judge.

A jury convicted Amanda Jean Nails of trafficking methamphetamine, possession with intent to distribute, possession of more than 28 grams of methamphetamine, theft by receiving property stolen from another state, and obstruction of an officer. The trial court denied Nails's amended motion for new trial,[1] and she appeals, arguing that (1) the evidence was insufficient to support the verdict as to the charges of trafficking and theft by receiving stolen property, and (2) the trial court erred by admitting extrinsic evidence under OCGA § 24-4-404 (b). For the following reasons, we affirm in part and reverse in part.

---

[1] No hearing occurred on the motion for new trial.

In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict. [Nails] no longer enjoys a presumption of innocence, and we will uphold the verdict so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]

So viewed, the record shows that on November 25, 2018, a patrol officer saw a Dodge Charger make an abrupt lane change that caused another motorist to hit the brakes and honk the horn. The officer activated his lights and pursued the Charger to a dead end area where the officer used his vehicle to block the exit. At that point, a male exited the Charger from the right rear passenger side, at which point the Charger maneuvered around the cruiser to flee.

The officer took the passenger, Cedrick Jackson, into custody, and Jackson provided the names of the occupants of the vehicle and told the officer that a pistol was tossed out of the car;[3] the officer testified that Jackson told him Amanda Nails threw the weapon, which Jackson disputed at trial. The Charger was found abandoned

---

[2] (Citations omitted.) *Arnold v. State*, 262 Ga. App. 61 (1) (584 SE2d 662) (2003), citing *Jackson v. Virginia*, 443 U. S. 307, 319-320 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), *Ellis v. State*, 257 Ga. App. 409, 411 (3) (571 SE2d 198) (2002).

[3] Jackson identifies Wright as "Little Tank," "Mini Jug," or "Little Jug." He identified "Mandy Nails," and "Doug Bray's daughter."

a short distance away with a cell phone in the front seat; officers later established that the phone belonged to Adam Kane Wright. A video from the officer's cruiser was entered into evidence, which includes Jackson's statements to the officer. Therein, Jackson states that Nails was in the backseat, Gracie Bray was in the passenger seat, and Wright was driving. At trial, Jackson testified that Bray, not Nails, disposed of the weapon.

During the chase, the officer radioed dispatch, which sent additional officers to the scene, and Jackson provided information about the weapon, contraband, and other occupants, which was radioed to those officers. Eventually, a revolver, which was wrapped in a handkerchief, and a case, which contained a digital scale and baseball-sized bag of methamphetamine weighing about 45.629 grams, were found along the Charger's route. An officer described the methamphetamine as "more than a user amount" based on his experience, and the presence of the digital scales indicated that it was intended for distribution in smaller amounts.

Bray testified that she overheard Wright speaking to Nails over the phone about pooling money together to "re-up" their supply of methamphetamine. Bray testified that Wright handed the gun to her, and she gave it to Nails, who disposed of it. Bray also testified that Wright handed her the container with the drugs, which she tried to

3

throw out of the window, but then handed to Nails to throw out because Bray's window wouldn't operate. The State also introduced a November 24 email from Nails to Bray's father giving him a phone number to call, a November 24 phone call from Bray's father at the jail to the phone number given to him by Nails in which he told the person he was sending his kids to do business with the person, and a November 25 phone call in which Nails told Bray's father over a jailhouse call that they threw "all the trash" out of the window when the police were pursuing them, and the police did not apprehend any of them.[4]

---

[4] The full conversation between Doug Bray and Nails was:
Doug Bray: Did y'all get everything worked out?
Nails: Listen. Well…I mean, sort of.
Doug: OK.
Nails: Listen. Mini [J]ug and Gracie are here in Rome. I was with them earlier.
Doug: Alright.
Nails: But we kind of had to flee from where we were.
Doug: Why what happened?
Nails: Nothing. Nothing. Nothing. Everybody's OK and everything's fine.
Doug: OK. That's what matters . . . .
Doug: Alright. Keep going.
Nails: We threwed [sic] our trash out the window . . . .
Doug: You threw your trash out the window in front of the police?
Nails: Yes. Something like that.
Doug: Did it have other stuff in the trash?
Nails: Uh-huh. It had everything in the trash. I don't know but they didn't find none of us!

Additionally, a phone call from another inmate, Destin Brand, to Nails was introduced in which Brand states, "I want to better my life to help you out so you so you ain't gotta God damn run the dope no more." Nails responds by saying, "Well, get a job[,] and I won't. . . .Get a job[,] and I'll stop." The recording was made in the evening on November 24. The State also introduced a message from Wright's phone; the message stated, "you want a [.]38 or a 9? The 9 is super small," to which Wright responded, "9 millimeter. . . ." Additionally, pictures of guns were sent to Wright on his phone as he corresponded to the sender. Bray also testified that around November 22-23 before this incident, Wright was in Alabama. When he returned on November 23, he had a watch that he gave to her. The owner of the gun testified that the weapon was stolen from her home in Ohatchee, Alabama, in November 2018, by someone other than Nails or Wright. The owner identified it was a "pink lady," which originally was covered in pink paint but had the paint mostly removed from it when she received it back from the police. She testified that the alleged thief was living in her house at the time, and a number of other things including "rings, . . . coins, and everything else" were also stolen.

Wright testified in his own defense, stating that on November 25, 2018, he lived in Centre, Alabama, which is about an hour and a half away from Ohatchee. He

5

denied being in the car chase, and he stated he did not see Bray until the evening of November 25. A number of calls were made between his phone and Nails's phone number on November 24 and 25, but he claimed that his phone was stolen earlier that week.

Regarding the counts in which Nails and Wright were charged together, the court instructed the jury to "please consider each count of this indictment separately. And in the counts where both Ms. Nails and Mr. Wright are both charged, please consider the count as to each defendant separately. So you will deliberate the count as to Ms. Nails, and then you are to deliberate the count as to Mr. Wright." The court also charged the jury as to sole or joint possession and actual and constructive possession, explaining that the jury should acquit the defendant unless it found beyond a reasonable doubt that the "defendant knowingly possessed the contraband or shared possession or control with another person and helped or procured the other person in possessing and having control of the contraband." The jury convicted Nails of the charges.[5] This appeal followed.

1. Nails argues the trial court erred by admitting a recorded phone call between her and Brand in which he discusses her "running dope." We disagree.

---

[5] Wright's conviction is not part of this appeal.

"The admission of evidence is a matter which rests largely within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion."[6] At trial, the State sought to introduce a portion of a conversation between Nails and Brand on November 24, 2018, the day before the police chase in which Brand referred to Nails selling "dope." Nails objected to the admission of the conversation on the grounds that it "would be far more prejudicial than probative."[7] The trial court overruled Nails's objection, noting that Nails's response was admissible as an adoptive admission.

On appeal, Nails argues that the recorded conversation was inadmissible under OCGA § 24-4-404 (b) because the State failed to provide notice of its intent to use the conversation as extrinsic evidence. Nails, however, failed to raise this specific objection in the trial court, arguing instead that the recorded conversation was inadmissible because it violated her confrontation right because Brand was not called

---

[6] (Punctuation omitted.) *Kim v. State*, 337 Ga. App. 155, 157 (786 SE2d 532) (2016).

[7] Nails also challenged below the call on confrontation grounds, but she has not raised that issue on appeal.

7

to testify and because it was highly prejudicial.[8] In any event, Nails also argues that the probative value of the conversation was substantially outweighed by its prejudicial effect, rendering it inadmissible under OCGA § 24-4-403.[9]

> It should be reiterated that the exercise of discretion under Rule 403 is case-specific and usually turns on the trial court's assessment of the probative value and prejudicial effect of the particular evidence at issue. . . . But we also recall that exclusion of evidence under Rule 403 is "an extraordinary remedy" that "should be used only sparingly" to prohibit "matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.[10]

We discern no abuse of discretion. Here, the conversation between Nails and Brand specifically referencing "running dope," occurred on the same day she emailed Bray with a phone number, which he later used to set up a drug deal for "his kids,"

---

[8] See *Trotter v. State*, 248 Ga. App. 156, 157 (2) (546 SE2d 286) (2001) ("It is well settled that no issue is presented for appellate review regarding a question of evidence admissibility as to which the trial court was not called to rule upon at trial.") (punctuation omitted).

[9] OCGA § 24-4-403 provides: "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

[10] (Citations omitted.) *State v. Orr*, 305 Ga. 729, 742 (4) (b) (827 SE2d 892) (2019), quoting *Kirby v. State*, 304 Ga. 472, 480 (819 SE2d 468) (2018).

8

and it occurred the day before Nails was involved in the police chase, which she related to Bray on a call the following evening.[11] The trial court admitted the recording because it was relevant to the issue of Nails's knowledge of and involvement in the alleged drug possession and trafficking, against which charges she raised the defense of lack of knowledge at trial — contending that the State failed to establish she was aware of the contents of the package thrown from the vehicle.

> And although certainly prejudicial, we cannot say that the trial court abused its discretion in determining that the prejudicial effect did not substantially outweigh the probative value of the [telephone recordings]. Exclusion of evidence under OCGA § 24-4-403 is an extraordinary remedy which the courts should invoke sparingly, and the balance should be struck in favor of admissibility."[12]

Accordingly, the trial court did not abuse its discretion by allowing the evidence of the phone call between Brand and Nails.

2. Nails argues that the evidence was insufficient to convict her for theft by receiving stolen property and trafficking methamphetamine.

---

[11] See *Satterfield v. State*, 339 Ga. App. 15, 20 (1) (a) (792 SE2d 451) (2016) (explaining that "intrinsic" evidence that is related to the charged crimes, occurs close in time, and is probative of issues applicable to trial is admissible if it is more probative than prejudicial).

[12] (Citation and punctuation omitted.) Id. at 21 (1) (b).

9

(a) *Trafficking methamphetamine.*

OCGA § 16-13-31 (e) provides in pertinent part that "any person who sells . . . or has possession of 28 grams or more of methamphetamine . . . or any mixture containing . . . methamphetamine . . . commits the felony offense of trafficking in methamphetamine. . . ."

> [P]ossession of contraband may be actual or constructive. Moreover, joint constructive possession with another will sustain a conviction for possession of contraband. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. The law recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons shared actual or constructive possession of a thing, possession is joint.[13]

And although

> it is true that mere presence at the scene of a crime is insufficient to convict one of being a party to the crime, evidence of a defendant's conduct prior to, during, and after the commission of a criminal act will authorize the defendant's conviction for commission of the criminal act

---

[13] (Citation and punctuation omitted.) *Lopez-Vasquez v. State*, 331 Ga. App. 570, 571-572 (1) (771 SE2d 218) (2015).

10

if a jury could infer from the conduct that the defendant intentionally encouraged the commission of the criminal act.[14]

Here, the evidence showed that police recovered 45.629 grams of methamphetamine on the route of the vehicle occupied by Nails. Bray testified that prior to picking up Nails and Jackson, she over heard a telephone conversation between Wright and Nails in which the two discussed "re-upping" their supply of drugs together. Bray also stated that there were drugs in the container she passed to Nails to throw out of the vehicle. Coupled with the email and phone call to Bray, the call Bray made to the number provided to him by Nails in which he set up a transaction, and Nails's conversation with Brand, the jury was authorized to find Nails guilty of possessing a trafficking amount of methamphetamine.[15]

(b) *Theft by receiving property stolen in another state*. Nails was charged along with Wright of theft by receiving a handgun belonging to another, "which [handgun] the accused, knew and should have known was stolen in another state, to wit:

---

[14] (Citations and punctuation omitted.) *Ratana v. State*, 297 Ga. App. 747, 749 (678 SE2d 193) (2009). See also *Denson v. State*, 353 Ga. App. 450, 452 (838 SE2d 117) (2020).

[15] See, e.g., *Lopez-Vasquez*, 331 Ga. App. at 572-573 (1).

ALABAMA, with no intent to restore said property to the owner, contrary to the laws of this State, the good order, peace and dignity thereof."

OCGA § 16-8-8 provides that

[a] person commits the offense of theft by receiving property stolen in another state when [s]he receives, disposes of, or retains stolen property which [s]he knows or should know was stolen in another state, unless the property is received, disposed of, or retained with intent to restore it to the owner.

In order to establish that the possessor of stolen property "knew or should have known that the property was stolen . . . [knowledge] may be inferred from possession in conjunction with other evidence of knowledge, and such guilty knowledge may be inferred from circumstances which would excite suspicion in the mind of an ordinary prudent man."[16] Knowledge that a gun was stolen, however, cannot be inferred solely on the basis that a defendant possessed the stolen gun.[17]

---

[16] (Citation omitted.) *Wells v. State*, 268 Ga. App. 62, 62-63 (1) (601 SE2d 433) (2004) (reviewing conviction under OCGA § 16-8-7 (a) for theft by receiving stolen property).

[17] See id. at 63 (reversing conviction for theft by receiving stolen property because the evidence only established possession and not knowledge of the status of the weapon). See also *Wooten v. State*, 348 Ga. App. 408, 413 (2) (823 SE2d 98) (2019) (explaining that the knowledge element for theft by receiving stolen property under OCGA § 16-8-7 is not satisfied if the evidence shows "no more than . . .

12

At trial, the evidence showed that the revolver had been reported stolen in Alabama, and the owner testified that she believed someone other than Nails, whom she did not know, took the weapon. The officer testified that Jackson told him Nails threw the weapon out of the car on the day of the pursuit; however, at trial, Jackson testified that Bray threw out the weapon. This is not sufficient evidence to "establish additional circumstances from which a jury could rationally infer that [Nails] knew or should have known that the gun [she threw out of the widow] was stolen."[18] There was additional evidence that Wright corresponded over text message with someone about purchasing a weapon, as well as testimony from Bray that Wright was in Alabama immediately before the instant events. The State, however, did not charge Nails with conspiracy to possess the weapon, and there was no evidence produced at trial to establish that she was aware of Wright's presence in Alabama or about his correspondence about purchasing a weapon from a third party in that state.[19]

---

possession" of a stolen handgun).

[18] *Wooten*, 348 Ga. App. at 413 (2).

[19] Compare with *Reese v. State*, 313 Ga. App. 746, 747 (1) (a) (722 SE2d 441) (2012) (explaining that the circumstances in which the defendant was found with the items was sufficient to support the jury's guilty verdict as to theft by receiving stolen property under OCGA § 16-8-7); *Kimble v. State*, 236 Ga. App. 391, 397 (5) (512 SE2d 306) (1999) (holding that the evidence was sufficient to support the conviction

13

Moreover, although the weapon was defaced of its unique color at some point between its theft and its recovery by police, there was no evidence that Nails would have been aware of the color (even assuming that she was the individual who threw the weapon from the vehicle) because all the evidence presented at trial establishes that it was wrapped in cloth when it was discovered by police and when Bray handed it to Nails.[20] Accordingly, we reverse Nails's conviction for theft by receiving stolen property.

*Judgment affirmed in part and reversed in part. Miller, P. J., and Mercier, J., concur.*

_____

for violating OCGA § 16-8-8 because the defendant gave a statement that he knew his brother stole the vehicle in another state).

[20] Despite the State's argument to the contrary, the removal of the color in and of itself is insufficient to support an inference that the weapon was stolen. See, e.g, *White v. State*, 283 Ga. 566, 568 (2) (662 SE2d 131) (2008) (reversing conviction for violating theft by receiving stolen property prohibited by OCGA § 16-8-7 despite engraving on the stolen gun because the markings "[did] not exclude the possibility that the weapon may have been given away or sold 'on the black market.'") (punctuation omitted).